# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| K.MIZRA LLC | § | |
| | § | |
| v. | § | Case No.  2:21-cv-00247-JRG |
| | § | (Lead Case) |
| BROADCOM INC. | § | |

| | | |
|---|---|---|
| K.MIZRA LLC | § | |
| | § | |
| v. | § | |
| | § | Case No.  2:21-cv-00248-JRG |
| FORESCOUT TECHNOLOGIES, INC. | § | (Member Case) |

| | | |
|---|---|---|
| K.MIZRA LLC | § | |
| | § | |
| v. | § | |
| | § | Case No.  2:21-cv-00249-JRG |
| FORTINET, INC. | § | (Member Case) |

## DEFENDANT FORESCOUT TECHNOLOGIES, INC.'S MOTION TO DISMISS AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

LEGAL STANDARD.............................................................................................................. 3

ARGUMENT ........................................................................................................................... 5

I.      The Amended Complaint Fails to Plausibly Allege Any Claim of Direct Infringement.... 5

        A.      K.Mizra's Amended Complaint fails to plausibly allege direct infringement of the
                "trusted platform module" limitations *by Forescout*. ............................................ 6

        B.      K.Mizra's Amended Complaint fails to allege plausible direct infringement of the
                "receiving a response with a valid attestation of cleanliness" limitations. ........... 12

II.     The Amended Complaint fails to allege any plausible claim of indirect infringement. ... 14

III.    The Court Should Dismiss the Amended Complaint With Prejudice.............................. 15

CONCLUSION...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amhil Enters., Ltd. v. Wawa, Inc.*,
  81 F.3d 1554 (Fed. Cir. 1996)....................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................4, 5

*Audio MPEG, Inc. v. Società Italiana Per Lo Sviluppo Dell' Elettronica Spa*,
  No. 2:16-cv-82, Doc. No 1 (E.D. Va. Dec. 21, 2015) ............................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................4, 5

*In re Bill of Lading Transmission & Processing System Patent Litigation*,
  681 F.3d 1323 (Fed. Cir. 2012).................................................................4

*Bustos v. Martini Club Inc.*,
  599 F.3d 458 (5th Cir. 2010) ................................................................3, 5

*Cellular Commc'ns Equip. LLC v. HTC Corp.*,
  2016 WL 4204136 (E.D. Tex. Aug. 9, 2016) .........................................11

*Chapterhouse, LLC v. Shopify, Inc.*,
  No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ...............................5

*Chhim v. Univ. of Tex. at Austin*,
  836 F.3d 467 (5th Cir. 2016) ................................................................4, 6

*De La Vega v. Microsoft Corp.*,
  No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)...........................5

*Juniper Networks, Inc. v. Shipley*,
  643 F.3d 1346 (Fed. Cir. 2011).................................................................15

*KCJ Corp. v. Kinetic Concepts, Inc.*,
  223 F.3d 1351 (Fed. Cir. 2000)............................................................6, 14

*Lexington Luminance LLC v. Serv. Lighting & Elec. Supplies, Inc.*,
  No. 3:18-CV-01074-K, 2018 WL 10425908 (N.D. Tex. Oct. 9, 2018) ....................5

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ....................................................................3

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007)................................................................................11

*Network Sec. Techs., LLC v. Forescout Techs., Inc.*,
    Case No. 1:17-cv-01488 (D. Del. 2018) ...........................................................1, 2, 15

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
    553 U.S. 617 (2008)..............................................................................................14

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003) ..............................................................................15

*Ruby Sands LLC. v. Am. Nat'l Bank of Tex.*,
    2016 WL 3542430 (E.D. Tex. 2016) .....................................................................4

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
    No. 5:19-cv-243-H, 2021 WL 3030066 (N.D. Tex. July 2, 2021) ......................4, 6

*Stragent, LLC. v. BMW of N. Am., LLC*,
    No. 6:16-cv-00446-RWS, 2017 WL 2832613 (E.D. Tex. Mar. 27, 2017) ............11

*Stragent, LLC. v. BMW of N. Am., LLC*,
    No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017) ..............4, 10, 11

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009)............................................................................14

**Other Authorities**

X.509, https://en.wikipedia.org/wiki/X.509 .............................................................12

X.509 Public Key Certificates, https://docs.microsoft.com/en-
    us/windows/win32/seccertenroll/about-x-509-public-key-certificates .................12

Fed. R. Civ. P. 12 ...................................................................................................5

Fed. R. Civ. P. 12(b)(6)........................................................................1, 3, 4, 11

TPM 2.0 Library – Specification,
    https://trustedcomputinggroup.org/resource/tpm-library-specification ...................7

Trusted Platform Module Technology Overview, https://docs.microsoft.com/en-
    us/windows/security/information-protection/tpm/trusted-platform-module-
    overview..................................................................................................................9

## STATEMENT OF ISSUES

1.     Whether the Complaint states a claim for infringement of United States Patent 8,234,705.

2.     Whether the Complaint states a claim for infringement of United States Patent 9,516,048.

## INTRODUCTION

Plaintiff K.Mizra LLC's ("K.Mizra") Amended Complaint (Dkt. 36) against Defendant Forescout Technologies, Inc. ("Forescout") fails to state a claim upon which relief may be granted. This Court should therefore dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

K.Mizra filed its initial Complaint (Dkt. 1) on July 8, 2021.  Forescout responded with a Rule 12(b)(6) motion (Dkt. 22) arguing that the Complaint failed to state a claim because it was totally devoid of any factual allegations that plausibly showed that the accused Forescout products performed the essential limitations of both asserted patents,[1]—namely, multiple limitations requiring "contacting a trusted computing base associated with a trusted platform module within the first host, receiving a response, and determining whether the response includes a valid digitally signed attestation of cleanliness." (*See* '705 patent, claim 19, and '048 patent, claim 17, which are the only two expressly asserted claims in the Amended Complaint.).

Instead of responding to Forescout's Motion to Dismiss the Complaint, K.Mizra filed an Amended Complaint in an apparent attempt to correct the fundamental problem with K.Mizra's infringement case against Forescout.  K.Mizra's Amended Complaint does not fix the problem; it only makes it worse.  K.Mizra re-alleges the conclusion that the accused Forescout product practices a claim limitation and then cites Exhibit D as "support" for the conclusion.  Exhibit D is an excerpt from Forescout's product manual.  However, Exhibit D expressly contradicts K.Mizra's conclusions of infringement.  K.Mizra has therefore pled itself out of Court.

Moreover, K.Mizra's unfixable problem is not new.  Another patent-assertion entity previously sued Forescout on the same patents. *See Network Sec. Techs., LLC v. Forescout Techs.,*

---

[1] U.S. Patents 8,234,705 (the "'705 patent") and 9,516,048 (the "'048 patent").

*Inc.*, Case No. 1:17-cv-01488 (D. Del. 2018), Dkt. 1.  Forescout informed Network Security Technologies exactly why the accused Forescout product does not contact a trusted platform module or receive a valid digitally signed attestation of cleanliness (Ex. A at 2).  Network Security Technologies then voluntarily dismissed the Complaint.  *Network Sec. Techs.*, Case No. 1:17-cv-01488 (D. Del. 2018), Dkt. 8.  K.Mizra is aware of this history prior to filing this action.  Indeed, K.Mizra specifically relies on this prior action to allege knowledge of the patents by Forescout. Am. Compl. ¶ 8.  K.Mizra is also aware of the specific deficiency that led to dismissal in the prior case because Forescout expressly told K.Mizra that "Forescout's products do not contain or interact, directly or indirectly, with a 'trusted platform module within the first host,' as required by every claim."  Ex. B at 1.  Nevertheless, K.Mizra forged ahead with its baseless Complaint and Amended Complaint in its repeated attempts to pound a round peg into a square hole.

## BACKGROUND

In January 2021, after acquiring the '705 and '048 patents, the ownership of which has bounced around like bad pennies, K.Mizra reached out to Forescout demanding a license to the patents.  On February 23, 2021, Forescout sent a letter to K.Mizra alerting it to the prior Network Security Technology lawsuit and identifying the same problem with the infringement allegations that led to dismissal in that case: "Forescout's products do not contain or interact, directly or indirectly, with 'a trusted platform module within the first host,' as required by every claim."  *Id.*

Despite this history, K.Mizra stubbornly filed this action on July 8, 2021.  K.Mizra's Complaint alleged that Forescout infringes "at least" claim 19 of the '705 patent and claim 17 of the '048 patent and did not specifically address any other claims.  Dkt. 1, ¶¶ 28–64.  K.Mizra alleged only direct infringement.  *Id.*, ¶ 29 (alleging infringement of the '705 patent by "making, using, importing, selling, offering for sale, and/or importing"), ¶ 51 (same for '048 patent). K.Mizra relied on the prior *Network Security Technologies* litigation to allege that Forescout had

2

pre-suit knowledge of the asserted patents.  *Id.*, ¶ 7.  Other than mere quotations of the claim language, K.Mizra's defective Complaint contained only a single paragraph referencing the term "trusted platform module" (by its abbreviation, "TPM").  K.Mizra made no attempt whatsoever to properly plead that Forescout products practice the multiple claim limitations requiring "contacting a trusted computing base associated with a trusted platform module within the first host, receiving a response, and determining whether the response includes a valid digitally signed attestation of cleanliness."  (*See* '705 patent, claim 19, and '048 patent, claim 17).  Not surprisingly, Forescout moved to dismiss.

Instead of filing a brief responsive to Forescout's motion to dismiss, K.Mizra filed an Amended Complaint to fix its pleading problem.  But K.Mizra's fix is to make more conclusory allegations (e.g., "The accused Instrumentalities also meet all the requirements of limitation B1 of Claim 19") (Amended Complaint, ¶ 37) and carelessly cut and paste screenshots from a Forescout online product manual (Exhibit D) that supposedly support the conclusory allegations.  Review of the screenshots and Exhibit D, however, shows that K.Mizra's conclusory allegations are not even remotely supported by K.Mizra's careless citations.  Indeed, Exhibit D expressly contradicts K.Mizra's conclusory allegations.

## LEGAL STANDARD

In analyzing Rule 12(b)(6) motions, courts may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  Although the court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff, the court need not accept as true conclusory allegations and allegations contradicted by other allegations, including exhibits, in a plaintiff's own complaint.  *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

Moreover, courts "do not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). Thus, a "court should dismiss a patent claim where the plaintiff merely recites that defendant infringes a claim limitation but fails to identify the parts of the allegedly infringing instrumentality that perform the limitation or allege how the identified parts meet the text of the limitation." *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-cv-243-H, 2021 WL 3030066, at *5 (N.D. Tex. July 2, 2021).  As stated in *In re Bill of Lading Transmission & Processing System Patent Litigation*, 681 F.3d 1323, 1342 (Fed. Cir. 2012), "[i]n some circumstances, failure to allege facts that plausibly suggest a specific element or elements of a claim have been practiced may be fatal in the context of a motion to dismiss."

Under the well-established standards of *Twombly* and *Iqbal*, a court must also consider whether those well-pleaded facts state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will be *a context-specific task that requires the reviewing court to draw on its judicial experience and common sense*." *Iqbal*, 556 U.S. at 679 (emphasis added).

Drawing upon its judicial experience and common sense, this Court has not hesitated to dismiss patent claims where the patentee, despite having more than one chance, failed to allege plausible infringement of each patent claim elements. *See Ruby Sands LLC. v. Am. Nat'l Bank of Tex.*, 2016 WL 3542430, at *4 (E.D. Tex. 2016) (dismissing patent claims on Rule 12(b)(6) motion where Complaint did not plausibly support plaintiff's claim for relief and where the court was "left to wonder whether [plaintiff] performed a thorough pre-suit investigation."); *see also Stragent, LLC. v. BMW of N. Am., LLC*, No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697, at *5–6 (E.D.

Tex. Mar. 3, 2017) (dismissing patent infringement claim that failed to allege plausible infringement of each patent claim element); *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *6 (W.D. Tex. Feb. 11, 2020) (dismissing an infringement claim where the plaintiffs presented screenshots to support their claim but failed to identify the parts of the alleged infringing instrumentality named in and necessary to perform one of the claim limitations); *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018) ("While screenshots may be useful in laying out a plausible allegation of patent infringement, Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal*/*Twombly* standard is met."); *Lexington Luminance LLC v. Serv. Lighting & Elec. Supplies, Inc.*, No. 3:18-CV-01074-K, 2018 WL 10425908, at *2 (N.D. Tex. Oct. 9, 2018) ("[A] plausible inference that an accused device meets all the limitations of the asserted claims cannot be inferred from the bare conclusory allegations that this is so.  Additional information, [which supports a plausible inference that the accused devices practice the asserted claim] . . . , is required under the standards of *Twombly* and *Iqbal*.").

## ARGUMENT

### I.    The Amended Complaint Fails to Plausibly Allege Any Claim of Direct Infringement.

K.Mizra's Amended Complaint does not state a plausible claim for infringement of any claim of the asserted patents.  Literal infringement—the only form of infringement alleged in the Amended Complaint[2]—"occurs when every limitation recited in the claim appears in the accused

---

[2] Although the Amended Complaint mentions the doctrine of equivalents in passing (Amended Complaint, ¶ 30), the Amended Complaint contains no factual allegations supporting any doctrine of equivalents theory for any claim term.  As such, this allegation is nothing more than a conclusory allegation, which the Court should disregard on this Rule 12 motion.  *Bustos*, 599 F.3d at 461.

device, i.e., when 'the properly construed claim reads on the accused device exactly.'" *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1358 (Fed. Cir. 2000) (quoting *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)). Thus, to survive a motion to dismiss, K.Mizra must plausibly allege that every limitation in at least one claim appears in the accused Forescout system. *Chhim*, 836 F.3d at 469; *Soar*, 2021 WL 3030006, at \*5. It has failed to do so.

Every asserted claim recites limitations relating to a "trusted platform module." For example, the following limitations are present in the only claims specifically asserted in the Complaint:

> '705 patent, claim 19: "contacting a trusted computing base associated with a trusted platform module within the first host, receiving a response, and determining whether the response includes a valid digitally signed attestation of cleanliness"

> '048 patent, claim 17: "contacting a trusted computing base associated with a trusted platform module within the first host, receiving a response, and determining whether the response includes a valid digitally signed attestation of cleanliness"

Although not specifically referenced in the Amended Complaint, every other independent claim of the '705 and '048 patents recites a substantially identical limitation including a "trusted platform module." *See* '705 patent, claims 1, 12; '048 patent, claims 1, 10.

## A.    K.Mizra's Amended Complaint fails to plausibly allege direct infringement of the "trusted platform module" limitations *by Forescout*.

K.Mizra has alleged infringement, "on information and belief," of the "trusted platform module" limitation for the '705 patent in three scant paragraphs, none of which connects Forescout or any Forescout product to a "trusted platform module," apart from quoting the asserted claims. Amended Complaint, ¶¶ 37–39. The first paragraph, Paragraph 37, states incoherently:

> Limitation B1 requires that "detecting the insecure condition includes" "contacting a trusted computing base associated with a trusted platform module within the first host." The Accused Instrumentalities also meet all the requirements of limitation B1 of claim 19. For example, the SecureConnector, which is a part of the trusted computing base, is a small-footprint executable that runs on the endpoint. *See* Exhibit D, HPS Inspection Engine Configuration Guide at 4. The SecureConnector

creates a secure (encrypted TLS) connection to the CounterACT Appliance managing the endpoint. *See id.* at 13, 35. Secure connections utilize cryptographically secure random numbers. The SecureConnector invokes APIs that generate cryptographically secure random numbers that are seeded in part by the trusted platform module ("TPM"). By making this connecting code that invokes these APIs, Forescout makes the Accused Instrumentalities that are associated with a TPM. Then, once the SecureConnector is contacted and receives inspection and action requests, it responds to the requests via this connection. *See id.* All Forescout traffic between SecureConnector and the Appliance takes place over the connection secured in part by the TPM on the endpoint. *See id.*

The second paragraph, Paragraph 38, states, in its entirety: "Further, as of July 28, 2016, Windows 10 requires all new devices to implement by default TPM 2.0," and includes a Microsoft screenshot announcing that Windows 10 devices "must implement and enable by default TPM 2.0."[3]

The third paragraph, Paragraph 39 states, in its entirety: "Therefore, the Accused Instrumentalities meet limitation of B1 of Claim 19."

The Amended Complaint infringement allegations for the '048 patent also are made on "information and belief," and they simply refer back to these three paragraphs without further analysis. *Id.*, ¶ 59. Thus, K.Mizra's Amended Complaint's information-and-belief infringement claims rise or fall depending on whether the above three paragraphs state a plausible claim for infringement. They do not.

As is clear from Amended Complaint paragraph 39, K.Mizra relies exclusively on Exhibit D to support its conclusion that the "Accused Instrumentalities meet all the requirements of limitation B1 of claim 19." *Id.*, ¶ 37. A review of Exhibit D, however, completely debunks K.Mizra's conclusory allegation. Exhibit D shows that Forescout's software uses an "HPS

---

[3] TPM, also known as ISO/IEC 11889, is an international standard for a secure cryptoprocessor, a dedicated microcontroller designed to secure hardware through integrated cryptographic keys. TPM 2.0 Library – Specification, https://trustedcomputinggroup.org/resource/tpm-library-specification.

Inspection Engine," which resides on a network server, to "manage remediate or control endpoints." Ex. D at 4.  The HPS Inspection Engine can be deployed remotely (without installing an agent on the endpoint, e.g., a laptop) or directly via an agent, namely SecureConnector™.  *Id* at 5.  SecureConnector™ only creates a secure channel for communications between the network server (which hosts and runs the Forescout malware scanning appliances eyeSight™ and eyeControl™) and the endpoint device. *Id.* at 6.  As stated in Exhibit D: "SecureConnector creates an *encrypted tunnel* from the endpoint to the Appliance through TCP port 1003." *Id.* (emphasis added).

Nothing in Exhibit D says, or even implies, that SecureConnector™ is "part of the trusted computing base" on the endpoint device as required by the asserted patent claims and as alleged in paragraph 37 of the Amended Complaint.  Nor could it be, because the patentee explained that the invention requires "contacting a trusted computer base *within a computer*, and . . . requesting an authenticated infestation scan by trusted software."  ('705 patent, column 13, line 66—column 14, line 1, emphasis added.).  Moreover, the patentee explained that the trusted computing base is:

> described in various TCG specifications, such as the TCG Architecture Overview published by the Trusted Computing Group.  Trusted code bases may for example execute antivirus scans of the remainder of the computer, including untrusted portions of the disk and/or operating system.

*Id.* (column 14, lines 5–10).  The patentee made clear, therefore, that the trusted computing base (compliant with TCG architecture) is a code base that is on the endpoint computer and that runs the computer scans.

Exhibit D does not reference the TCG specifications in any way because SecureConnector™ is not compliant with TCG specifications (and there is no allegation to the contrary in the Amended Complaint).  Moreover, as Exhibit D makes clear, SecureConnector™ is not performing virus scans on the computer (again, there is no allegation to the contrary in the

Amended Complaint). Instead, SecureConnector™ simply creates a secure communication channel (an "encrypted tunnel") between the Forescout appliance running on the network server and the endpoint device. Exhibit D to the Amended Complaint completely contradicts K.Mizra's infringement theory and renders K.Mizra's conclusions in paragraph 37 implausible. K.Mizra cannot avoid dismissal by alleging a conclusion and then citing a document that impeaches the conclusion.

Further attempting to connect the dots between Forescout and the claimed invention in the '705 and '048 patents, K.Mizra says SecureConnector™'s use of "APIs" (Appliance Programming Interfaces) somehow makes the "Accused Instrumentalities . . . associated with a TPM." Amended Complaint, ¶ 37. It does not. The claim language expressly requires that the trusted computing base be associated with a trusted platform module within the first host. ('705 patent, claim 19; '048 patent, claim 17). Thus, the invention depends on a trusted computing base that resides within the endpoint computer and that is associated with a TPM (Trusted Program Module),[4] also within the endpoint device (the first host). As the claim language makes clear, it is the trusted computing base that must be associated with a trusted platform module. The invention does not claim a secure communication channel (the "encrypted tunnel") associated with a TPM. That Forescout's SecureConnector™ allegedly uses APIs does not make SecureConnector™ a trusted computing base associated with a TPM. Once, again, Amended Complaint Exhibit D renders K.Mizra's unfounded and conclusory allegations implausible.

---

[4] As alleged in the Amended Complaint, Microsoft devices, as of July 28, 2016, must be compliant with TPM 2.0. Microsoft, in turn, defines "TPM" as "a secure crypto-processor that is designed to carry out cryptographic operations. The chip includes multiple physical security mechanisms to make it tamper-resistant, and malicious software is unable to tamper with the security functions of the TPM." *See* Trusted Platform Module Technology Overview, https://docs.microsoft.com/en-us/windows/security/information-protection/tpm/trusted-platform-module-overview.

K.Mizra's pleading problem is not saved by Paragraph 38 of the Amended Complaint, which contains a screenshot of a Microsoft announcement regarding TPM 2.0 (and which does not reference Forescout or any Forescout product).  *Id.*  Paragraph 38 only includes allegations about Microsoft's Windows 10 operating system.  *Id.*  The Amended Complaint does not mention Windows 10 in any other paragraph and makes no attempt and to link Forescout (or its products) to the allegation in paragraph 38.  *See generally id.*  The Amended Complaint also does not allege that Forescout is responsible for, contributed to, or is in any way liable for Microsoft's decision to require TPM in Windows 10 devices.  *See generally id*.  Thus, paragraph 38 fails to state a plausible claim of infringement *by Forescout*.

The most the Court can infer from paragraph 38 is that Windows 10 devices must include a "trusted platform module."  This inference, however, has no connection to Forescout and thus cannot support a plausible claim of patent infringement *by Forescout*.  Moreover, the allegation that Windows 10 devices must include a "trusted platform module" does not state a plausible claim of infringement *by anyone*.  The asserted patent claims do not require merely that a "trusted platform module" exist.  Instead, the asserted claims require that the patented computer software "contact" the "trusted computing base associated with a trusted platform module" and "receiv[e] a response" from it.  *E.g.*, '705 patent, claim 19 ("contacting a trusted computing base associated with a trusted platform module within the first host, receiving a response, and determining whether the response includes a valid digitally signed attestation of cleanliness").  K.Mizra's Amended Complaint's paragraph 38 does not state a plausible claim of infringement *by anyone*, much less *by Forescout*.

K.Mizra's disjointed attempt to rely on Microsoft's TPM 2.0 "standard" likens this action to *Stragent, LLC. v. BMW of N. Am*, 2017 WL 2821697 (E.D. Tex.), in which the magistrate judge

recommended granting a 12(b)(6) motion in a patent case because the complaint failed to allege plausible infringement of each patent claim element. In *Stragent*, the plaintiff attempted to avoid dismissal by alleging that an accused device infringed the asserted patent claim because the device purportedly complied with an industry standard. As the judge explained, however,

> Stragent's Complaint identifies no common element between the AUTOSAR Standard and the asserted claims, nor does it explain how the accused products, by complying with the AUTOSAR Standard, also infringe the asserted claims. *Audio MPEG, Inc. v. Società Italiana Per Lo Sviluppo Dell' Elettronica Spa*, No. 2:16-cv-82, Doc. No 1 at 4 (E.D. Va. Dec. 21, 2015). Such threadbare allegations do not put Defendants on notice as to what they must defend against under Rule 12(b)(6). *Cellular Commc'ns Equip. LLC v. HTC Corp.*, 2016 WL 4204136, at *2 (E.D. Tex. Aug. 9, 2016) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007)).

*Stragent*, 2017 WL 2821697, at *5. On reviewing the magistrate judge's recommendation, Judge Schroeder stated, "The Court agrees with the Magistrate Judge and finds that Plaintiff's claims for direct and indirect infringement are insufficiently pled" but ultimately denied the motion as moot because an intervening amended complaint had been filed. *Stragent, LLC. v. BMW of N. Am., LLC*, No. 6:16-cv-00446-RWS, 2017 WL 2832613, at *1 (E.D. Tex. Mar. 27, 2017).

Like the plaintiff in *Stragent*, K.Mizra has inadequately alleged infringement. Although K.Mizra has pleaded facts regarding Windows 10 and TPMs, K.Mizra's pleadings, even taken as true, do not indicate any plausible connection between Windows 10 and TPMs, on one hand, and the accused Forescout product, on the other. K.Mizra appears to be relying on a standard-like requirement (i.e., Microsoft's requirements for Windows 10 devices), but the Amended Complaint contains no allegation, explanation, or indication as to why the alleged relationship between Windows 10 and TPMs makes it plausible that the accused Forescout instrumentality "contact[s] a trusted computing base associated with a trusted platform module." Thus, as in *Stragent*, K.Mizra's Amended Complaint fails because it "identifies no common element between the [alleged Microsoft Windows 10 requirements] and the asserted claims, nor does it explain how the

accused products, by complying with the [alleged Microsoft Windows 10 requirements], also infringe the asserted claims."

**B.      K.Mizra's Amended Complaint fails to allege plausible direct infringement of the "receiving a response with a valid attestation of cleanliness" limitations.**

K.Mizra also fails to save its infringement allegation regarding limitation [B2], which requires: "receiving a response and determining whether the response includes a valid digitally signed attestation of cleanliness."  As the claim language makes clear, the trusted computing base associated with a trusted platform module must respond with a valid digitally signed attestation of cleanliness.  K.Mizra again points to SecureConnector™ and once again relies exclusively on the attached Exhibit D to support its conclusory allegation, on information and belief, that Forescout products meet these essential claim limitations.  Amended Complaint, ¶¶ 40–41.  A review of Exhibit D reveals that it provides no support.  Instead, it renders K.Mizra's conclusion implausible.

As Exhibit D makes clear, the only referenced response from the endpoint is an "X.509-compliant public key certificate."  Ex. D, at 13 ("secure the connection using an X.509-compliant public key certificate").  As K.Mizra knows, or surely would know if it did any pre-filing investigation, X.509 is an International Telecommunication Union standard defining the format of public key certificates.  X.509 certificates are used in many internet protocols, including TLS/SSL, which is the basis for HTTPS, the secure protocol for browsing the web.  *See* X.509, https://en.wikipedia.org/wiki/X.509.  As explained by Microsoft, "public key cryptography relies on a public and private key pair to encrypt and decrypt content."  *See* X.509 Public Key Certificates,  https://docs.microsoft.com/en-us/windows/win32/seccertenroll/about-x-509-public-key-certificates.

Here, in a failed attempt to connect the dots between the claimed invention and Forescout's product, K.Mizra has latched onto the word "certificate" in Exhibit D to jump to the conclusion

that Forescout's SecureConnector™, which K.Mizra mistakenly calls a trusted computing base, is generating an attestation of cleanliness that, in turn, includes at least one of an attestation that the trusted computing base has ascertained that the first host is not infected.  ('705 patent, claim 19.). Per the claim language, the trusted computing base must generate the attestation of cleanliness. Exhibit D makes clear, however, that Forescout's SecureConnector™ is not generating an attestation of cleanliness.  Instead, "[w]hen this option [using SecureConnector™] to establish a secure communication channel is enabled, SecureConnector clients on Windows endpoints present an [X.509-compliant] certificate when they connect to the Forescout platform."  Ex. D. at 13. Thus, per Exhibit D to the Amended Complaint, it is the Windows endpoint (e.g., the client laptop) that is generating the X.509-complaint certificate (which, in any event, is not an attestation of cleanliness cited in the Claim 19 limitation).  Per Exhibit D, Forescout's SecureConnector™ provides only the communication channel through which the client endpoint communicates the X.509 certificate.  As made clear by Exhibit D, SecureConnector™ is not generating any certificate or valid digitally signed attestation of cleanliness.  Once again, Ex. D to the Amended Complaint expressly contradicts K.Mizra's conclusory allegation.

The remaining allegations of paragraph 41 (none of which are linked to the "valid digitally signed attestations of cleanliness") do not relate to any "response," but instead vaguely refer to a "Compliance Center" that can be visible to the user.  Amended Complaint, ¶ 41 (citing Exhibit F at 128).  As Exhibit F makes clear, the Compliance Center is a "console" (i.e., a dashboard) that collects information about user endpoints (Exh. F at 24).  It is not generating any valid digitally

signed attestation of cleanliness (nor is there any allegation that it does so).  Thus, because K.Mizra

does not allege that this console is the claimed "response," K.Mizra has failed to state a claim.[5]

## II.     The Amended Complaint fails to allege any plausible claim of indirect infringement.

K.Mizra's Amended Complaint alleges in conclusory fashion—only in two paragraphs—

that Forescout is liable for indirect infringement in the form of induced infringement and

contributory infringement.  Amended Complaint, ¶¶ 50 & 51.  Characteristically, K.Mizra recites

the legal elements of these infringement theories without alleging any facts that plausibly state

claims upon which relief can be granted.  K.Mizra also does not explain how third parties could

indirectly infringe K.Mizra's patents if, as K.Mizra alleges, Forescout is selling them an infringing

product.  It is settled that indirect infringement requires proof, among other things, that a third

party is directly infringing the asserted patents.  *Vita-Mix Corp. v. Basic Holding, Inc*., 581 F.3d

1317, 1328 (Fed. Cir. 2009).  Equally settled is that when an authorized sale of a patented article

occurs, the patent holder's exclusive rights to control the use and sale of that article are said to be

"exhausted," and the purchaser is free to use or resell that article without further restraint from

patent law.  *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008).  Thus, it is legally

implausible for Forescout to be liable for selling an infringing product *and* liable for inducing or

contributing to infringement by a third-party purchaser of Forescout's products.

K.Mizra's indirect infringement allegations also rely on the same flawed conclusions

asserted in connection with its direct infringement allegations and, therefore, should be dismissed.

---

[5] The Amended Complaint fails to allege that the accused Forescout products plausibly meet other essential limitations of the '705 and '048 patents.  Because of space limitations, we do not address them all in this motion.  Suffice it say that the failure to properly plead infringement of any single claim limitation dooms Plaintiff's Amended Complaint.  *KCJ Corp.*, 223 at 1358.

### III.    The Court Should Dismiss the Amended Complaint With Prejudice.

K.Mizra is attempting to assert patent infringement claims against Forescout that the prior owner of the patents in suit raised against Forescout and voluntarily dismissed after being fully informed of the circumstances. *Network Sec. Techs., LLC*, Dkts. 1 (complaint), 8 (notice of voluntary dismissal without prejudice).  K.Mizra was aware of this history because Forescout specifically raised it in pre-suit communications.  Ex. B.

K.Mizra thus knew that its infringement theory was deficient with respect to the "trusted platform module" and "certificate of cleanliness" limitations.  Nevertheless, it stubbornly filed its initial defective Complaint and its baseless Amended Complaint.  The Amended Complaint contains no new theory of infringement.  Instead, it attempts to skate by on the same implausible theory by citing generally to Exhibit D, thereby placing misplaced hope that the Court will not consider the exhibits attached to the Amended Complaint.  Exhibit D, as explained herein, expressly contradicts K.Mizra's conclusions.  Accordingly, any additional amendments will be futile.  Under these circumstances, the Court should dismiss this action with prejudice. *See Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1352 (Fed. Cir. 2011) (affirming dismissal with prejudice where complaint "could not be saved by further amendment"); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (court may deny leave to amend where there is "repeated failure to cure deficiencies by amendments previously allowed" or if the amendment would be "futil[e]").

### CONCLUSION

For the foregoing reasons, the Court should dismiss K.Mizra's Amended Complaint with prejudice.

DATED: October 7, 2021                    Respectfully submitted,

                                          */s/ Kimball R. Anderson*
                                          Kimball R. Anderson (Ill. Bar No. 49980)
                                          WINSTON & STRAWN LLP
                                          35 West Wacker Drive
                                          Chicago, IL 60601-9703
                                          312-558-5600 (phone)
                                          312-558-5700 (fax)
                                          kanderson@winston.com

                                          Katherine Vidal (Cal. Bar No. 194971)
                                          Matthew R. McCullough (Cal. Bar No. 301330)
                                          WINSTON & STRAWN LLP
                                          275 Middlefield Road, Suite 205
                                          Menlo Park, CA 94025
                                          650-858-6500 (phone)
                                          650-858-6550 (fax)
                                          kvidal@winston.com
                                          mrmccullough@winston.com

                                          William Fox (Tex. Bar No. 24101766)
                                          WINSTON & STRAWN LLP
                                          2121 North Pearl Street, Suite 900
                                          Dallas, TX 75201
                                          214-453-6500 (phone)
                                          214-453-6400 (fax)
                                          wfox@winston.com

                                          Deron Dacus (Tex. Bar No. 00790553)
                                          Shannon Dacus (Tex. Bar No. 00791004)
                                          THE DACUS FIRM, P.C.
                                          821 ESE Loop 323, Suite 430
                                          Tyler, Texas 75701
                                          903-705-1117 (phone)
                                          903-581-2543 (fax)
                                          ddacus@dacusfirm.com

                                          **ATTORNEYS FOR DEFENDANT**
                                          **FORESCOUT TECHNOLOGIES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing document was served on all parties who have appeared in this case on October 7, 2021, via the Court's CM/ECF system.


Dated: October 7, 2021                                   /s/ *Kimball R. Anderson*
                                                          Kimball R. Anderson

17