**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| K.MIZRA LLC | ) | |
| | ) | |
| v. | ) | C.A. No. 2:21-CV-00247-JRG |
| | ) | (Lead Case) |
| CA, INC. | ) | |

| | | |
|---|---|---|
| K.MIZRA LLC | ) | |
| | ) | |
| v. | ) | C.A. No. 2:21-CV-00248-JRG |
| | ) | (Member Case) |
| FORESCOUT TECHNOLOGIES, INC. | ) | |

| | | |
|---|---|---|
| K.MIZRA LLC | ) | |
| | ) | |
| v. | ) | C.A. No. 2:21-CV-00249-JRG |
| | ) | (Member Case) |
| FORTINET, INC. | ) | |

**PLAINTIFF K.MIZRA'S OPPOSITION TO DEFENDANT**
**FORESCOUT'S MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    RESPONSE TO STATEMENT OF ISSUES ................................................. 1

III.   FACTUAL BACKGROUND ........................................................................... 2

IV.    LEGAL STANDARD ...................................................................................... 5

V.     ARGUMENT .................................................................................................... 6

       A.     The Amended Complaint Properly Pleads Infringement ................... 6

              1.     The Amended Complaint Sufficiently Pleads K.Mizra's Allegations ........... 6

              2.     Forescout Relies on Improper and Premature Claim Constructions ............ 10

              3.     Patent Exhaustion Does Not Bar K.Mizra's Indirect Infringement Theory  12

       B.     Prior Litigation Does Not Preclude K.Mizra from Further
              Amendment ......................................................................................... 13

VI.    CONCLUSION ............................................................................................... 15

**Cases**

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ................................................................................. 6

*Bowlby v. City of Aberdeen*,
681 F.3d 215 (5th Cir. 2012) ............................................................................ 5, 7

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ........................................................................ 5, 9

*K.Mizra LLC v. Cisco Sys., Inc.*,
No. 6:20-cv-01031-ADA (W.D. Tex. July 19, 2021) ................................................. 12

*Kirsch Research & Dev., LLC v. Atlas Roofing Corp.*,
No. 5:20-CV-00055-RWS, 2020 U.S. Dist. LEXIS 248825 (E.D. Tex. Sep. 29, 2020) ........ 10, 11

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) ............................................................................ 11

*Lifetime Indus., Inc., v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017) ........................................................................ 6, 8

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) .............................................................................. 5

*Motiva Patents, LLC v. Sony Corp.*,
408 F. Supp. 3d 819 (E.D. Tex. Sept. 27, 2019) ................................................ 10, 12

*Nanoco Techs., Ltd. v. Samsung Elecs*. Co.,
No. 2:20-cv-00038-JRG, 2021 U.S. Dist. LEXIS 89223 (E.D. Tex. May 10, 2021) ................ 11

*Network Sec. Techs., LLC v. Forescout Techs., Inc.*,
No. 1:17-cv-01488 (D. Del.) ................................................................................ 5

*Optimum Imaging Techs. LLC v. Canon Inc.*,
No. 2:19-CV-00246-JRG, 2020 U.S. Dist. LEXIS 257201 (E.D. Tex. May 1, 2020) ............. 5, 8

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
553 U.S. 617 (2008) ....................................................................................... 13

*Solocron Educ., LLC v. Healthstream, Inc.*,
No. 2:16-cv-16, 2016 U.S. Dist. LEXIS 189974 (E.D. Tex. June 7, 2016) ...................... 9

*Starpay.com, L.L.C. v. Visa Int'l Serv. Ass'n*,
No. 3-03-CV-976-L, 2003 U.S. Dist. LEXIS 19754 (N.D. Tex. Nov. 4, 2003) ........................... 14

*Uniloc USA, Inc. v. Avaya Inc.*,
No. 6:15-cv-1168, 2016 U.S. Dist. LEXIS 181826 (E.D. Tex. May 13, 2016) ............................ 8

*Via Vadis, LLC v. Buffalo Ams., Inc.*,
Nos. A-14-CV-808-LY *et seq.*, 2017 U.S. Dist. LEXIS 66098 (W.D. Tex. Feb. 28, 2017) ........ 11

## <u>Rules</u>

Fed. R. Civ. P. 8 ...................................................................................................................... 8, 13

Fed. R. Civ. P. 15 ...................................................................................................................... 2, 6

## I.    INTRODUCTION

After Plaintiff K.Mizra successfully mooted Defendant Forescout's First Motion to Dismiss by filing an Amended Complaint, Forescout now returns to this Court with a Second Motion to Dismiss primarily directed to issues that Forescout could have raised in connection with its First Motion—but did not. Forescout's strategy of incrementally identifying allegedly missing claim elements in serial motions effectively asserts that K.Mizra must include detailed element-by-element factual allegations within its complaint—an argument that both the Federal Circuit and this Court have repeatedly rejected as improperly demanding more than is required under governing pleading standards. Forescout further improperly premises its Second Motion on premature and overly restrictive claim construction positions, and argues without basis that K.Mizra should be precluded from further amendment based on mischaracterizing the record in an unrelated prior litigation brought by a prior assignee of the patents-in-suit. For the reasons detailed below, Forescout's Second Motion should be denied.

## II.    RESPONSE TO STATEMENT OF ISSUES

Defendant Forescout Technologies, Inc. identifies the following issues to be decided by this Court:

1.    Whether the Complaint states a claim for infringement of United States Patent 8,234,705.

2.    Whether the Complaint states a claim for infringement of United States Patent 9,516,048.

Both issues are properly answered "yes." Plaintiff K.Mizra LLC has sufficiently stated claims for infringement of both patents-in-suit under the correct law and the proper scope of the claims, given that:

- Forescout disputes well-pleaded facts that must be taken as true, misapplies governing law, and prematurely relies on incorrect claim constructions before completion of the *Markman* process; and

- Forescout is on notice of its infringing activity because K.Mizra's complaint adequately describes the technology covered by the patent, identifies Forescout's infringing activity, identifies the Accused Instrumentalities, and identifies how the Accused Instrumentalities infringe.

## III. <u>FACTUAL BACKGROUND</u>

On July 8, 2021, K.Mizra filed its original complaint for patent infringement against Forescout. *See* ECF No. 1.[1] As was Forescout's right, instead of answering, Forescout moved to dismiss K.Mizra's complaint (the "First Motion"). *See* ECF No. 22. Forescout now claims in the instant motion that its First Motion alleged deficiencies with respect to K.Mizra's factual allegations concerning "multiple limitations." ECF No. 44 (the "Second Motion") at 1. But Forescout in fact focused its First Motion on a narrow dispute directed to a single claim term, arguing that K.Mizra had not alleged sufficient evidence to meet the asserted '705 and '048 patents' common claim limitation "contacting a trusted computing base associated with a trusted platform module within the first host . . . " ECF No. 22 at 1. Specifically, Forescout's First Motion contended that K.Mizra had failed to demonstrate that Forescout "uses or interacts with the 'trusted platform module' [("TPM")] in any way." *Id.*

After receiving Forescout's First Motion, K.Mizra exercised its own rights under Federal Rule of Civil Procedure 15(a)(1)(B) and filed its Amended Complaint. *See* ECF No. 36. In the Amended Complaint, K.Mizra further clarified its infringement allegations concerning the TPM limitation (*compare* Complaint ¶ 36 *with* Amended Complaint ¶ 37), thus mooting Forescout's First Motion and its core argument directed to the "associated with a TPM" limitation. *See* ECF

---

[1] K.Mizra's original complaint was filed in Member Case No. 2:21-CV-00248-JRG. All other ECF docket entries cited herein reference consolidated Lead Case No. 2:21-CV-00247-JRG.

No. 37. K.Mizra's Amended Complaint also added causes of action for indirect infringement. *See* ECF No. 36 ¶¶ 50, 67.

K.Mizra's operative Amended Complaint describes the technology covered by the patents-in-suit, identifies the infringing activity, identifies the Accused Instrumentalities, and identifies how the Accused Instrumentalities infringe. Specifically, the Amended Complaint alleges that Forescout infringes the asserted '705 and '048 patents,[2] which are "directed to technological solutions that address specific challenges grounded in computer network security." ECF No. 22 ¶ 22. Further, the Amended Complaint identifies by name and model number network security products, network equipment, software, and related services accused of infringement (the "Accused Instrumentalities"). *See id.* ¶ 2. Finally, the Amended Complaint sets forth with particularity how Forescout infringes each limitation of exemplary claim 19 of the '705 patent and exemplary claim 17 of the '048 patent. *See id.* ¶¶ 32-49, 56-66. In support of this latter category of allegations the Amended Complaint attaches and cites extensively to an array of Forescout product guides and technical documentation. *See id.* Exs. C-D, F-H.

On September 9, Forescout filed the instant Second Motion. *See* ECF No. 44. In its Second Motion, Forescout now raises an entirely new set of arguments, all but one of which—a purely legal issue relating to K.Mizra's newly-added indirect-infringement allegations—could have been raised in its First Motion. Notably absent from Forescout's Second Motion is any argument that K.Mizra's Amended Complaint does not properly place Forescout on notice of what activity K.Mizra accuses of infringement. *See generally* ECF No. 44.

---

[2] K.Mizra does not dispute that the grounds in Forescout's motion are equivalently applicable to the '705 and '048 patents. For simplicity, K.Mizra cites herein to the '705 patent.

Instead, Forescout's Second Motion newly argues that the claim term "trusted computing base" requires that said trusted computing base must both: (1) "compl[y] with TCG specifications"; and (2) "perform virus scans" (and then argues for dismissal because Forescout's product allegedly does not do either of these things). ECF 44 at 8. Forescout does not characterize its argument as claim construction, but Forescout interprets the term "trusted computing base" in light of select language from the patent specification, as follows:

> described in various TCG specifications, such as the TCG Architecture Overview published by the Trusted Computing Group. Trusted code bases may for example execute antivirus scans of the remainder of the computer, including untrusted portions of the disk and/or operating system.

*See id.* (citing '705 patent[3] at 14:5-10). Forescout's block-quote (as re-quoted above) omits the leading introductory clause explaining that its quoted language is merely exemplary—i.e., "*Another example* of a trusted computing base is . . . ." (highlighted in red below):

> authenticated infestation scan by trusted software. An example of a trusted computing base within a computer is the Paladium security initiative under development by Microsoft and supported by Intel and American Micro Devices. Another example of a trusted computing base is described in various TCG specifications, such as the TCG Architecture Overview, published by the Trusted Computing Group. Trusted code bases may for example execute antivirus scans of the remainder of the computer, including untrusted portions of the disk and/or operating system. In some embodiments, trusted code bases may digitally sign assertions about the cleanliness (e.g. infestation status) and/or state of their computers. In some

'705 patent 14:1-12 (emphasis and highlighting added). This exemplary trusted computing base is one of six different embodiments described in that section of the '705 patent alone—three of which

---

[3] The '705 patent is Exhibit A to K.Mizra's Amended Complaint. *See* ECF No. 36.

are excerpted and highlighted in green above, including expressly non-TCG implementations, such as "the Palladium security initative." *Id.*

Lastly, Forescout's Second Motion argues that the Court should preclude K.Mizra from further amendment of its complaint, in light of a prior litigation commenced against Forescout by a prior assignee of the '705 and '048 patents. *See* ECF No. 44 at 1-2, 15 (citing *Network Sec. Techs., LLC v. Forescout Techs., Inc.*, No. 1:17-cv-01488 (D. Del.)). Forescout acknowledges that the prior *Network Security* case was dismissed without prejudice. *See* ECF No. 44 at 15 (citing No. 1:17-cv-01488, ECF No. 8 (D. Del. Feb. 1, 2018)). Yet Forescout further argues that K.Mizra's "Amended Complaint contains no new theory of infringement," but does not compare the infringement theory pled in the *Network Security* complaint to the present infringement theories pled in the Amended Complaint. *See id.*

## IV.  **LEGAL STANDARD**

For motions to dismiss under Rule 12(b)(6), a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *See Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). When reviewing a 12(b)(6) motion, courts may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

It has long been the law that a plaintiff alleging patent infringement need not "prov[]e its case at the pleading stage," nor do the "Federal Rules of Civil Procedure . . . require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Optimum Imaging Techs. LLC v. Canon Inc.*, No. 2:19-CV-00246-JRG, 2020 U.S. Dist. LEXIS 257201, at *3-4 (E.D. Tex. May 1, 2020) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331, 1335 (Fed. Cir. 2012)). Indeed, the Federal Circuit continues to reaffirm this core

principle. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1346, 1352 (Fed. Cir. 2021) ("To the extent [courts] have adopted a blanket element-by-element pleading standard for patent infringement, that approach is unsupported and goes beyond the standard the Supreme Court articulated in *Iqbal* and *Twombly*.") (citing, *inter alia*, *Bill of Lading*). To "assert a plausible claim for infringement under the *Iqbal/Twombly* standard," a complaint simply must include "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8*, 4 F.4th at 1353. That is, the complaint must "place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" *Lifetime Indus., Inc., v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (citations omitted).

## V.   ARGUMENT

### A.   The Amended Complaint Properly Pleads Infringement

In its Amended Complaint, K.Mizra has properly pled infringement—under the correct legal standard. Indeed, Forescout does not dispute that K.Mizra's Amended Complaint places Forescout "on notice of what activity . . . is being accused of infringement." *Lifetime Indus.*, 869 F.3d at 1379. Rather, all of Forescout's arguments either misapply the law or are already addressed by the well-pleaded allegations—all of which must be taken as true for purposes of this motion— that are contained within K.Mizra's Amended Complaint. Accordingly, Forescout's motion to dismiss should be denied.[4]

#### 1.   The Amended Complaint Sufficiently Pleads K.Mizra's Allegations

In its First Motion, Forescout primarily pursued its "associated with a TPM" argument— i.e., that K.Mizra's original complaint did not demonstrate that Forescout uses or interacts with the

---

[4] If the Court were to accept Forescout's arguments and grant the Second Motion—which it should not—K.Mizra respectfully requests leave to file a Second Amended Complaint, so as to address all defects newly raised within that Second Motion. *See* Fed. R. Civ. P. 15(a)(2) (the Court "should freely give leave [to amend] when justice so requires").

TPM. *See* ECF No. 22 at 1. K.Mizra mooted this argument by amending its complaint to clarify that Forescout's accused SecureConnector software is in fact associated with a TPM because "[t]he SecureConnector *invokes APIs* that generate cryptographically secure random numbers *that are seeded in part by the trusted platform module ('TPM')*. By making this connecting code that invokes these APIs, Forescout makes the Accused Instrumentalities that are associated with a TPM." ECF No. 36 ¶ 37 (emphasis added). In response Forescout now argues "[t]hat Forescout's SecureConnector™ allegedly uses APIs does not make SecureConnector™ a trusted computing base associated with a TPM." ECF No. 44 at 9.

The rationale behind Forescout's argument is unclear. Forescout concludes that "the invention depends on a trusted computing base that resides *within the endpoint computer* and that is associated with a TPM (Trusted Program Module), also *within the endpoint device (the first host)*." *See id.* (emphasis added). Forescout further contends that the invention of the patents-in-suit does not claim a secure communication tunnel associated with a TPM. *See id.* It is unclear how this orthogonal argument supports Forescout's conclusions. At the very least, Forescout appears to incorrectly conflate the accused software named "SecureConnector" with the secure connection it creates. Yet, as explained in the Amended Complaint, the SecureConnector software is indeed "a small-footprint executable *that runs on the endpoint*." *See* ECF No. 36 ¶ 35 (emphasis added). And as already mentioned, the Amended Complaint further explains that the SecureConnector endpoint software invokes APIs (which also reside on the endpoint) that generate cryptographically secure random numbers that are seeded in part by the TPM (all of which components reside on the endpoint). *See* ECF 36 ¶ 37. These allegations must be assumed to be true at this stage. *See Bowlby*, 681 F.3d 215 at 219. K.Mizra has thus met its core pleading burden by placing Forescout "on notice of what activity . . . is being accused of infringement" (*Lifetime*

*Indus.*, 869 F.3d at 1379), by alleging that "[b]y *making this connecting code* that invokes these APIs, Forescout *makes the Accused Instrumentalities* that are associated with a TPM." ECF No. 36 at 12 (emphasis added).

Despite K.Mizra's clarifying amendments, Forescout further misinterprets K.Mizra's allegations by arguing that "K.Mizra appears to be relying on a standard-like requirement" instead of alleging how the Forescout Accused Instrumentalities infringe. *See* ECF 44 at 11. This is not K.Mizra's infringement theory. As already detailed above, K.Mizra's Amended Complaint expressly alleges: "The SecureConnector invokes APIs that generate cryptographically secure random numbers that are seeded in part by the trusted platform module ( "TPM"). *By making this connecting code that invokes these APIs, Forescout makes the Accused Instrumentalities* that are associated with a TPM." ECF No. 36 at 12 (emphasis added). Thus, K.Mizra has already directly mooted this point and has placed Forescout on notice of its infringing activity.

Additionally, Forescout now argues for the first time that K.Mizra deficiently alleged infringement of limitation [B2], which requires: "receiving a response and determining whether the response includes a valid digitally signed attestation of cleanliness." *See* ECF No. 44 at 12-14. To start, Forescout's strategy of incrementally identifying allegedly missing claim elements in serial motions to dismiss is improper. In essence, Forescout effectively asserts that K.Mizra must include element-by-element factual allegations within the complaint to properly state a claim for direct infringement, "an argument this Court has repeatedly denied as improperly demanding more than is required by *Twombly-Iqbal* or Federal Rule of Civil Procedure 8(a)." *Optimum Imaging*, 2020 U.S. Dist. LEXIS 257201, at *5-6 (citing *Uniloc USA, Inc. v. Avaya Inc.*, No. 6:15-cv-1168, 2016 U.S. Dist. LEXIS 181826 (E.D. Tex. May 13, 2016); *Solocron Educ., LLC v. Healthstream,*

*Inc.*, No. 2:16-cv-16, 2016 U.S. Dist. LEXIS 189974 (E.D. Tex. June 7, 2016); *In re Bill of Lading*, 681 F.3d 1323).

Nevertheless, K.Mizra's Amended Complaint sufficiently places Forescout on notice of its infringing activity by explaining that:

> The Accused Instrumentalities also meet all the requirements of limitation B2 of claim 19. For example, the SecureConnector *responds by communicating endpoint information (e.g., whether or not there is an insecure condition) in the form of a valid digitally signed attestation of cleanliness* to the CounterACT Appliance managing the endpoint. *See, e.g.*, Exhibit D, HPS Inspection Engine Configuration Guide at 5, 13.

ECF No. 36 ¶ 40 (emphasis added). In response, Forescout incorrectly argues that: (1) K.Mizra's allegations do not relate to any "response"; (2) K.Mizra's cited Exhibit D somehow "contradicts" K.Mizra's allegations; and (3) the claims require the claimed trusted computing base "generate" the attestation of cleanliness. *See* ECF No. 44 at 13. These arguments all fail both factually and legally.

As shown in the excerpt above, K.Mizra explicitly alleges "the SecureConnector *responds* by communicating endpoint information (e.g., whether or not there is an insecure condition)" over a secure connection. *See* ECF No. 36 ¶ 40 (emphasis added). And contrary to Forescout's argument, K.Mizra's Exhibit D fully supports this allegation by, e.g., explaining that the SecureConnector endpoint software *responds* to inspection requests with an attestation of cleanliness over a secure connection:

## How SecureConnector Works

SecureConnector creates a secure (encrypted TLS) connection to the Appliance through port 10003. SecureConnector receives inspection and action requests and responds to them via this connection. All Forescout traffic between SecureConnector and the Appliance takes place over the secure connection.

ECF No. 36 Ex. D at 35 (emphasis added). Nothing more is required to plead K.Mizra's case. K.Mizra need only plead "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' in support of the alleged" patent infringement. *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 827 (E.D. Tex. Sept. 27, 2019) (quoting *Twombly*). Thus, K.Mizra has met its pleading burden by describing the technology covered by the patent, identifying the infringing activity, identifying the Accused Instrumentalities, and by identifying how the Accused Instrumentalities infringes. *See id.*

Moreover, neither the claims nor the specification recites that the trusted computing base must itself "generate the attestation of cleanliness," as Forescout contends. ECF 44 at 13. Indeed, at the motion-to-dismiss stage of the case, "Courts should give claims their broadest possible construction"—not the unsupported constructions prematurely posed by Forescout. *See Kirsch Research & Dev., LLC v. Atlas Roofing Corp.*, No. 5:20-CV-00055-RWS, 2020 U.S. Dist. LEXIS 248825, at *9 (E.D. Tex. Sep. 29, 2020). Thus, under the proper scope of the claims, K.Mizra has more than adequately pled its direct infringement case.

## 2. Forescout Relies on Improper and Premature Claim Constructions

Forescout's remaining arguments rely on two implicit claim construction positions—that the claimed "trusted computing base" must, in Forescout's view: (1) be "compliant with TCG specifications"; and (2) "perform[] virus scans" ECF 44 at 8. Forescout argues that because K.Mizra's Exhibit D to the Amended Complaint purportedly does not support such allegations, the complaint should be dismissed. *See id.* at 8-9. But these alleged restrictions that Forescout seeks to impose are both premature and wrong. The asserted claims recite neither the "TCG specifications" nor "virus scans." To inject these narrowing requirements, Forescout improperly relies on premature claim constructions. On this basis alone, Forescout's motion should be denied, as claim construction is inappropriate at this early stage. *See Kirsch Research,* 2020 U.S. Dist.

LEXIS 248825 at * 9 ("[C]laim construction at the pleading stage—with no claim construction processes undertaken—[is] inappropriate.") (citations omitted). Instead, Courts should give claims their broadest possible construction. *See id.* For the reasons explained in the previous section, K.Mizra has sufficiently pled direct infringement under the proper scope of the claims.

Moreover, Forescout's claim constructions are simply wrong. As detailed above, in arguing that the "trusted computing base" limitation necessarily entails both "complian[ce] with TCG specifications" and "performing virus scans on the computer," Forescout misleadingly quotes one of at least six embodiments described in the specification as if it represented the sole disclosed embodiment. *See* ECF No. 44 at 8 (citing '705 patent at 14:5-10). But even if the identified embodiment on which Forescout focuses were in fact the only embodiment disclosed, it would still be improper to import these limitations into the claims, because the claim language is broader than just this embodiment. *See, e.g., Nanoco Techs., Ltd. v. Samsung Elecs. Co.*, No. 2:20-cv-00038-JRG, 2021 U.S. Dist. LEXIS 89223, *7 (E.D. Tex. May 10, 2021) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.") (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004)); *Via Vadis, LLC v. Buffalo Ams., Inc.*, Nos. A-14-CV-808-LY *et seq.*, 2017 U.S. Dist. LEXIS 66098, at *6 (W.D. Tex. Feb. 28, 2017) ("a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment") (citations omitted). Forescout's proposed claim constructions are thus wrong and should not be considered as requirements.

Finally, as instructive context, the term "trusted computing base" has already been construed—in a parallel case brought by K.Mizra in the Western District of Texas—inconsistently with the argument that Forescout now advances, per a construction agreed between the parties:

| | | |
|---|---|---|
| **I. AGREED CONSTRUCTIONS** | | |
| **A. U.S. Patent 8,234,705** | | |

| Claim Term | Claim(s) | Agreed Construction |
|---|---|---|
| "trusted computing base" [proposed for construction by both parties] | 1, 12, 19 | Hardware or software that has been designed to be a part of the mechanism that provides security to a computer system |

*K.Mizra LLC v. Cisco Sys., Inc.*, No. 6:20-cv-01031-ADA, ECF No. 35 (W.D. Tex. July 19, 2021). This construction is fully supported by the specification. *See, e.g.*, '705 patent at 14:1-26. Accordingly, Forescout's claim construction arguments fail not only as improperly advanced but also as facially incorrect, and Forescout's motion to dismiss should therefore be denied.

3.    Patent Exhaustion Does Not Bar K.Mizra's Indirect Infringement Theory

K.Mizra has also sufficiently pled its indirect infringement case, and Forescout has failed to establish otherwise. *See, e.g.*, *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d at 828 ("[I]nducement can be found where there is [e]vidence of active steps taken to encourage direct infringement."); ECF No. 36 ¶ 50 ("For example, since learning of the '705 patent and by failing to cease offering the Accused Instrumentalities for sale, Forescout has knowingly and intentionally induced users of the Accused Instrumentalities to directly infringe one or more claims of the '705 patent, inter alia, by (1) instructing users on how to use the Accused Instrumentalities in a manner that infringes the '705 Patent as described in the foregoing paragraphs . . .").

Indeed, Forescout does not dispute the sufficiency of K.Mizra's allegations. Rather, Forescout contends only that K.Mizra has already somehow exhausted its rights under the asserted

patents. *See* ECF No. 44 at 14. Forescout argues, without citing *Iqbal*/*Twombly*-related authority in support, that "it is legally implausible for Forescout to be liable for selling an infringing product *and* liable for inducing or contributing to infringement by a third-party purchaser of Forescout's products." *See* ECF No. 44 at 14 (emphasis original). But Forescout's own arguments highlight its internal logical error:

> Equally settled is that when an *authorized* sale of a patented article occurs, the patent holder's exclusive rights to control the use and sale of that article are said to be "exhausted," and the purchaser is free to use or resell that article without further restraint from patent law.

*See* ECF 44 at 14 (citing *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008)) (emphasis added). Specifically, Forescout misapplies the doctrine of patent exhaustion, in that before patent exhaustion attaches, there must first be an "authorized sale," a requirement that Forescout neglects to address and that is unquestionably absent from K.Mizra's allegations as pleaded. *See id.*

Forescout's argument is ultimately premature at best. Even if patent exhaustion may ultimately preclude K.Mizra, following a jury verdict of infringement, from duplicate recovery based on both direct and indirect infringement theories, K.Mizra is entitled to pursue alternative theories of infringement in the interim. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively . . . "). Forescout cites no contrary authority that allegedly applies in the context of simultaneous allegations of direct and indirect infringement.

### B.     Prior Litigation Does Not Preclude K.Mizra from Further Amendment

In the event this Court were to grant Forescout's Second Motion—which it should not— K.Mizra respectfully requests leave to further amend its complaint. Forescout improperly attempts to forestall this request by claiming that any such amendment would be futile, and that K.Mizra's complaint should thus be dismissed with prejudice. *See* ECF 44 at 15. Forescout is again wrong

on both the facts and the law.[5] Contrary to Forescout's mischaracterization, this case is not the latest in a series of allegedly "repeated attempts to pound a round peg into a square hole." *Id.* at 1. To start, this case is simply not the same as *Network Security Technologies, LLC*, a case brought against Forescout years ago by the prior assignee of the '705 and '048 patents. Moreover, Forescout acknowledges in a parenthetical that the *Network Security* litigation was dismissed *without prejudice. See* ECF No. 44 at 15. This case involves a different owner, a different infringement theory, and different issues implicated by the pleadings.

As to those infringement theories, Forescout argues that K.Mizra's "Amended Complaint contains no new theory of infringement" (*see* ECR No. 44 at 15)—but without actually comparing the infringement theory pled in the *Network Security* complaint to the infringement theories pled in the present Amended Complaint. A simple comparison disproves Forescout's arguments: Forescout's Exhibit A demonstrates that Forescout interpreted the *Network Security* plaintiff's infringement theory as primarily relying on the Trust Network Connect ("TNC") specification:

> ForeScout's products do not interact, and never have interacted, with a "trusted platform module within the first host," as required by every claim of the asserted patents. Your client's Complaint incorrectly assumes that ForeScout's products do so because your client apparently believes that ForeScout, as a member of Trusted Computing Group, has adopted the Group's Trust Network Connect specification. (Compl. ¶ 17.) Membership in the Group, however, does not require adoption of the specification. In fact, ForeScout has never adopted the specification. As your client would have noticed, if a pre-suit investigation had been performed, no ForeScout product, web page, or white paper claims compliance with the TNC specification or interaction with a trusted platform module.

ECF No. 44 Ex. A. In contrast, K.Mizra's current theory makes no reference to and does not in any way rely on the TNC specification. *See generally* ECF No. 36. K.Mizra instead alleges, for example, that "[t]he SecureConnector invokes APIs that generate cryptographically secure random

---

[5] Even if additional amendments were theoretically futile as Forescout contends, the time to deny a motion for leave to amend is only after the court is presented with the motion for leave together with a proposed amendment. To do so otherwise would run contrary to the liberality requirements of Rule 15(a). *See Starpay.com, L.L.C. v. Visa Int'l Serv. Ass'n*, No. 3-03-CV-976-L, 2003 U.S. Dist. LEXIS 19754, at *6 & n.3 (N.D. Tex. Nov. 4, 2003).

numbers that are seeded in part by the trusted platform module ('TPM'). *By making this connecting code that invokes these APIs, Forescout makes the Accused Instrumentalities* that are associated with a TPM." ECF No. 36 ¶ 37 (emphasis added). Thus, the prior *Network Security* complaint has no relevance to K.Mizra's ability to further amend to cure any alleged deficiencies.

Forescout further mischaracterizes the record by repeatedly contending that: "K.Mizra thus knew that its infringement theory was deficient with respect to the 'trusted platform module' and 'certificate of cleanliness' [*sic*][6] limitations." *See* ECF No. 44 at 1, 2, 15. Forescout argues that due to alleged repeated failures to cure such alleged deficiencies, future amendments would be futile. *See* ECF No. 44 at 1, 2, 15. But the correspondence that Forescout submits in support of its motion make zero reference to its new "attestation of cleanliness" argument. *See* ECF No. 44 Exs. A-B. Rather, the claim language cited in Forescout's Exhibit B—the letter addressed to K.Mizra's counsel—deliberately elides the "attestation of cleanliness" limitation, as highlighted in red below:

> An essential element of the '705 Patent calls for "contacting a trust computing base associated with a trusted platform module within the first host …." *See* Claim 1 of the '705 patent. Forescout's products do not contain or interact, directly or indirectly, with "a trusted platform module within the first host," as required by every claim. As you should know, a "trusted platform module" refers to a specific

See ECF No. 22-2 at 1 (highlighting added). But as further highlighted in green, Forescout's Exhibit B establishes that Forescout pursued only its "associated with a TPM" argument—which K.Mizra mooted with its Amended Complaint, as above. Forescout raised its failed "attestation of cleanliness" argument for the first time in this instant Second Motion, after seeing its first dismissal attempt fail. Thus, this case's prior history has no impact on K.Mizra's ability to further amend.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Forescout's Second Motion to dismiss.

---

[6] The asserted claims do not recite a "certificate of cleanliness," but rather an "attestation of cleanliness." *See, e.g.*, '705 patent at 22:24-26.

Date: October 22, 2021

Respectfully submitted,

LAW OFFICE OF JOSEPH M. ABRAHAM, PLLC

*/s/ Joseph M. Abraham*
Joseph M. Abraham, TX SB No. 24088879
**Law Office of Joseph M. Abraham, PLLC**
13492 Research Blvd., Suite 120, No. 177
Austin, TX 78750
T: 737-234-0201
Email: joe@joeabrahamlaw.com

Cristofer I. Leffler, WA Bar No. 35020
LEAD COUNSEL
Cliff Win, Jr., CA Bar No. 270517
**Folio Law Group PLLC**
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel:    (206) 880-1802
Email: cris.leffler@foliolaw.com
Email: cliff.win@foliolaw.com

*Of Counsel*:
Andrea L. Fair
Texas Bar No. 24078488
Claire Abernathy Henry
Texas Bar No. 24053063
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy.
Longview, TX 75604
Tel: (903) 757-6400
Fax: (903) 757-2323
Email: andrea@wsfirm.com
Email: claire@wsfirm.com

*Attorneys for K.Mizra LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I, Joseph M. Abraham, hereby certify that on October 22, 2021 a true and correct copy of

Plaintiff K.Mizra's Opposition to Defendant Forescout's Motion to Dismiss Amended Complaint

was served on the following counsel of record at the addresses and in the manner indicated below.

*/s/ Joseph M. Abraham*

Joseph M. Abraham

<u>**VIA ECF**</u>

| | |
|---|---|
| Kimball R. Anderson | William Fox |
| WINSTON & STRAWN LLP | WINSTON & STRAWN LLP |
| 35 West Wacker Drive | 2121 N. Pearl Street, Suite 900 |
| Chicago, IL 60601-9703 | Dallas, TX 75201 |
| 312-558-5600 (phone) | 214-453-6500 (phone) |
| 312-558-5700 (fax) | 214-453-6400 (fax) |
| kanderson@winston.com | wfox@winston.com |
| | |
| Katherine K. Vidal | Deron Dacus |
| Matthew R. McCullough | THE DACUS FIRM, P.C. |
| WINSTON & STRAWN LLP | 821 ESE Loop 323, Suite 430 |
| 275 Middlefield Road, Suite 205 | Tyler, Texas 75701 |
| Menlo Park, CA 94025 | 903-705-1117 (phone) |
| 650-858-6500 (phone) | 903-581-2543 (fax) |
| 650-858-6550 (fax) | ddacus@dacusfirm.com |
| kvidal@winston.com | |
| mrmccullough@winston.com | |

*Attorneys for Defendant Forescout Technologies, Inc.*