**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| K.MIZRA LLC | § | |
| | § | |
| v. | § | Case No. 2:21-cv-00247-JRG |
| | § | (Lead Case) |
| CA, INC. | § | |

| | | |
|---|---|---|
| K.MIZRA LLC | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:21-cv-00248-JRG |
| FORESCOUT TECHNOLOGIES, INC. | § | (Member Case) |

| | | |
|---|---|---|
| K.MIZRA LLC | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:21-cv-00249-JRG |
| FORTINET, INC. | § | (Member Case) |


**DEFENDANT FORESCOUT TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

I.  K.Mizra's Amended Complaint fails to plausibly allege direct infringement of the "trusted computing base" and "trusted platform" module limitations. ............................... 1

II.  K.Mizra's Amended Complaint fails to allege plausible direct infringement of the "receiving a response with a valid attestation of cleanliness" limitations. ......................... 4

III.  The Amended Complaint fails to allege any plausible claim of indirect infringement. ................................................................................................................ 8

IV.  The Court should dismiss the Amended Complaint with prejudice. ............................... 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................2, 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................2

*Bustos v. Martini Club Inc.*,
  599 F.3d 458 (5th Cir. 2010) ......................................................................................1, 3

*Edwards v. Doral Home Furniture, Inc.*,
  No. 6:19-cv-004601, 2020 WL 1495936 (E.D. Tex. 2020)...........................................5

*Iris Connex, LLC v. Dell, Inc.*,
  235 F. Supp. 3d 826 (E.D. Tex. 2017) ...........................................................................6

*Juniper Networks, Inc. v. Shipley*,
  643 F.3d 1346 (Fed. Cir. 2011).....................................................................................10

*Kirsch Research & Development, LLC v. Atlas Roofing Corp.*,
  No. 5-20-CV-00055-RWS, 2020 U.S. Dist. LEXIS 248835 (E.D. Tex. Sept.
  29, 2020) ......................................................................................................................5, 6

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017)......................................................................................2

*London v. Carson Pierie Scott & Co.*,
  46 F.2d 1534 (Fed. Cir. 1991)........................................................................................8

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) .........................................................................................3

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)........................................................................................................8

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
  553 U.S. 617 (2008)........................................................................................................9

*Takeda Pharms. U.S.A. Inc. v. West-Ward Pharm. Corp.*,
  785 F.3d 625 (Fed. Cir 2015)........................................................................................8

*Vita-Mix Corp. v. Basic Holding, Inc.*,
  581 F.3d 1317 (Fed. Cir. 2009)......................................................................................9

*Wordcheck Tech., LLC v. Alt-N Techs., Ltd.*,
   2012 WL 976725 (E.D. Tex. Jan. 11, 2012) ............................................................................6

**Other Authorities**

Fed. R. Civ. P. 8 .......................................................................................................................5

Fed. R. Civ.P. 8(d)(2) ..........................................................................................................9, 10

Fed. R. Civ. P. 12(b)(6) ........................................................................................................3, 6

Fed. R. Civ. P. 56 ....................................................................................................................6

## INTRODUCTION

Instead of fixing its defective pleading, Plaintiff K.Mizra only made its pleading problems worse with its Amended Complaint by realleging the conclusion "on information and belief" that the accused Forescout product practices the asserted claims and citing Exhibit D to the Amended Complaint as "support" for the conclusion.  Exhibit D, however, expressly contradicts K.Mizra's conclusions of infringement.  That dooms K.Mizra's Amended Complaint because a district court should not accept as true conclusory allegations contradicted by exhibits to plaintiff's own complaint.  *Bustos v. Martini Club Inc.*, 599 F.3d 458, 561 (5th Cir. 2010).

K.Mizra's response to Forescout's motion flails about with diversionary tactics instead of directly and coherently explaining how Exhibit D supports its conclusory allegations.  K.Mizra argues that Forescout is "implicitly" relying on disputed claim constructions.  Not true.  Forescout does not rely on any claim construction.  Forescout's motion is straightforward:  K.Mizra has failed to plausibly allege infringement; the Court therefore should dismiss the Amended Complaint.

## ARGUMENT

**I.    K.Mizra's Amended Complaint fails to plausibly allege direct infringement of the "trusted computing base" and "trusted platform" module limitations.**

Every asserted claim recites limitations relating to a "trusted computing base" and a "trusted platform module."  For example, the following limitations are present in the only claims specifically asserted in the Complaint:

'705 patent, claim 19: "contacting a trusted computing base associated with a trusted platform module within the first host, receiving a response, and determining whether the response includes a valid digitally signed attestation of cleanliness"

'048 patent, claim 17: "contacting a trusted computing base associated with a trusted platform module within the first host, receiving a response, and determining whether the response includes a valid digitally signed attestation of cleanliness"[1]

Instead of explaining how Exhibit D to the Amended Complaint supports its conclusory allegations of infringement, K.Mizra first argues that all that is required at the pleading state is "notice of what activity . . . is being accused of infringement." Dkt. 59 at 6 (citing *Lifetime Indus., Inc. v. Trim-Lok, Inc*., 869 F.3d 1372, 1379 (Fed. Cir. 2017)). Although a complaint should notify the infringer of the activity being accused of infringement, K.Mizra omits a key requirement. A complaint "must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Lifetime Indus., Inc.*, 869 F.3d at 1376 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). Meeting this requirement requires a plaintiff to do more than plead facts that are "'merely consistent with' a defendant's liability." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Thus, Forescout's motion does not fail merely because Forescout can figure out what products are accused of infringement. The question is whether K.Mizra's allegations support a plausible inference that the accused products meet the claim limitations.

The answer to that question is no. Aside from understating its burden of pleading, K.Mizra argues that it has "mooted" Forescout's arguments by alleging that "[t]he SecureConnector *invokes APIs* that generate cryptographically secure random numbers *that are seeded in part by the trusted platform module* ('TPM')." Dkt. 59 at 7 (emphases in original). This is the language K.Mizra added to its Amended Complaint that K.Mizra apparently believes makes it plausible that the accused products meet the above limitation.

---

[1] Although not specifically referenced in the Amended Complaint, every other independent claim of the '705 and '048 patents recites a substantially identical limitation that requires the accused instrumentality to contact a "trusted computing base" that, in turn, is associated with "trusted platform module." *See* '705 patent, claims 1, 12; '048 patent, claims 1, 10.

2

K.Mizra's new API language does not save its case.  The claim limitation requires contacting a trusted computing base ("TCB") associated with a trusted platform module (TPM) within the first host.  *See, e.g.*, '705 patent, claim 19.  K.Mizra still has not alleged that the accused instrumentality contacts a TCB, or even identified the alleged TCB.  That K.Mizra has concocted an API theory by which Forescout's SecureConnector™ is allegedly "associated" with a TPM misses the mark because the claim limitation requires that the accused instrumentality contact a TCB.  K.Mizra has only made the conclusory allegation that SecureConnector™ is somehow associated with a TPM, which is not enough.

Additionally, Exhibit D to the Amended Complaint makes clear that the accused instrumentality does not contact a TCB within the endpoint device.  According to Exhibit D, SecureConnector™ only creates a secure channel for communications between the network server (which hosts and runs the Forescout software) and the endpoint device.  Dkt. 36-4 at 6 ("SecureConnector creates an *encrypted tunnel* from the endpoint to the Appliance through TCP port 1003.") (emphasis added).  Nothing in Exhibit D says, or even implies, that the accused instrumentality contacts a TCB on the endpoint device, as required by the asserted patent claims.

Having made Exhibit D part of the Amended Complaint, K.Mizra cannot now sweep it under the rug.  A district court need not accept as true conclusory allegations and allegations contradicted by exhibits to plaintiff's own complaint.  *Bustos*, 599 F.3d at 561.  In analyzing 12(b)(6) motions, courts may consider "any documents attached to the complaint."  *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Thus, K.Mizra is left with two fatal problems: (1) it has failed to plead that the accused products contact a TCB; and (2) even if it had, Exhibit D shows that SecureConnector™ creates only an encrypted tunnel and does not perform the claim limitations.

## II.    K.Mizra's Amended Complaint fails to allege plausible direct infringement of the "receiving a response with a valid attestation of cleanliness" limitations.

Per the claim language, the TCB associated with a TPM on the endpoint must respond with a valid digitally signed attestation of cleanliness.  Once again, K.Mizra avoids any coherent explanation of how the accused product plausibly performs this function.  First, K.Mizra attempts to deflect from the critical issue by characterizing Forescout's arguments as a "serial" attack, Dkt. 59 at 8.  K.Mizra then points only to Exhibit D to the Amended Complaint as satisfying this limitation:

> K.Mizra's Exhibit D fully supports this allegation by, e.g., explaining that the SecureConnector endpoint software responds to inspection requests with an attestation of cleanliness of a secure connection:

*Id.* at 9.  K.Mizra pastes the following excerpt from Exhibit D into its response brief.

**How SecureConnector Works**

SecureConnector creates a secure (encrypted TLS) connection to the Appliance through port 10003. SecureConnector receives inspection and action requests and responds to them via this connection. All Forescout traffic between SecureConnector and the Appliance takes place over the secure connection.

*Id*.  K.Mizra concludes with: "[n]othing more is required." Dkt. 59 at 10.  We beg to differ.

Neither the excerpt above nor anything else in Exhibit D to the Amended Complaint remotely suggests that the accused Forescout software receives a "valid digitally signed attestation of cleanliness" from a TCB through the secure connection channel created by Secure Connector™.  That SecureConnector™ allegedly responds to unspecified requests does not make it plausible that SecureConnector™ provides a "valid digitally signed attestation of cleanliness."  The above excerpt does not describe the requests or responses, nor does it state anything about an attestation being "valid [and] digitally signed."  Thus, nothing in Exhibit D (the only thing cited by K.Mizra in its Opposition) states a plausible allegation of infringement.

After incorrectly declaring that "[n]othing more is required," K.Mizra pleads for discovery that "will reveal evidence in support of the alleged patent infringement."  However, "Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Edwards v. Doral Home Furniture, Inc.*, No. 6:19-cv-004601, 2020 WL 1495936 (E.D. Tex. 2020) (citing *Iqbal*, 556 U.S. at 678-79).

Then, acknowledging that there is no response in the form of a valid digitally signed certificate of cleanliness from the TCB, K.Mizra grasps for straws, arguing that "neither the claims nor the specification recites that the trusted computing base must itself generate the attestation of cleanliness." Dkt. 59 at 10.  K.Mizra is mistaken.  The plain claim language unambiguously requires "receiving a response" from a "trusted computing base" and determining whether it includes "a valid digitally signed attestation of cleanliness." *See, e.g.*, '705 patent, claim 19. Exhibit D to the Amended Complaint unequivocally shows that the accused instrumentality neither provides nor receives any such response or attestation of cleanliness.

Instead of coherently explaining how Exhibit D plausibly shows infringement, K.Mizra launches into a diversionary tactic by arguing that Forescout is "prematurely" posing unsupported claim construction. *Id.*  K.Mizra argues that Forescout relies on "two *implicit* claim constructions positions—that the claimed 'Trusted computing base' must, in Forescout's view: (1) be 'complaint with TCG specification'; and (2) 'perform[] virus scans.'" Dkt 59 at 10 (emphasis added). K.Mizra's use of the word "implicit" tells all.  Forescout has not relied on these so-called claim construction positions, implicitly or explicitly.  K.Mizra is making up arguments, falsely attributing them to Forescout, and then citing inapposite authority.[2]

---

[2] K.Mizra cites *Kirsch Research & Development, LLC v. Atlas Roofing Corp.*, No. 5-20-CV-00055-RWS, 2020 U.S. Dist. LEXIS 248835, at 89 (E.D. Tex. Sept. 29, 2020), which stands only for the

Forescout has no quarrel with the well-accepted propositions that motions to dismiss should be denied or deferred if they rest on disputed claim constructions,[3] that it is generally improper to import limitations into the claims, or that embodiments appearing in the specification ordinarily should not be read into the claim when the claim language is broader than the embodiment. Forescout is not doing any of these things. Thus, K.Mizra's two-page foray, *id.* at 10–11, into claim construction principles is an irrelevant diversionary tactic from the real problem with K.Mizra's Amended Complaint.

The real problem, which K.Mizra's opposition fails to confront, is that the Amended Complaint's allegations, including Exhibit D, do not remotely support a plausible claim for infringement of the asserted patents. The plain claim language requires "contacting a trusted computing base associated with a trusted platform module within the first host, receiving a response, and determining whether the response includes a valid digitally signed attestation of cleanliness." *See, e.g.*, '705 patent, claim 19. K.Mizra cites no authority supporting its argument that "the broadest possible construction" could possibly lead to elimination of these requirements, as apparently urged by K.Mizra in avoidance of Forescout's motion to dismiss, Dkt. 59 at 10—and none exists.

---

unremarkable proposition that the court should not dismiss a cause of action on a Rule 12(b)(6) motion when the defendant relies on a contested claim construction. *Kirsch* has no application here where Forescout is not relying on any claim construction, contested or otherwise.

[3] When a Rule 12(b)(6) motion truly rests on disputed claim construction, the early resolution of which could lead to termination of the case, the court has the option of converting the motion to a Rule 56 motion and setting an early "mini-Markman" hearing. *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 836 (E.D. Tex. 2017); *Wordcheck Tech., LLC v. Alt-N Techs., Ltd.*, 2012 WL 976725, at *2 (E.D. Tex. Jan. 11, 2012) (stating that a "mini-Markman" is appropriate where "construction of a very narrow set of terms could resolve the case as to most if not all, parties").

Accepting as true the description of the accused instrumentality in Exhibit D, it is implausible that the accused instrumentality is performing the required limitations of the asserted patents.   The only referenced "response" in Exhibit D is an "X.509-compliant public key certificate."  Ex. D at 13 ("secure the connection using an X.509-compliant public key certificate").  Exhibit D does not say the X.509 certificate comes from a TCB.  Moreover, Exhibit D indicates that the purpose of the X.509 certificate is to "secure the connection" with the endpoint computer, not to attest to the "cleanliness" of the endpoint.  Thus, aside from the making it implausible that the X.509 certificate comes from the TCB, Exhibit D makes it implausible that the X.509 certificate is the kind of certificate the claim language contemplates.[4]

Moreover, as Exhibit D makes clear, "[w]hen this option [using SecureConnector™] to establish a secure communication channel is enabled, SecureConnector clients on Windows endpoints present an [X.509-compliant] certificate when they connect to the Forescout platform."  *Id.*  Thus, per Exhibit D to the Amended Complaint, it is the Windows endpoint (e.g., the client laptop) that is providing the X.509-complaint certificate (which, in any event, is not an attestation of cleanliness cited in the Claim 19 limitation).  Per Exhibit D, Forescout's SecureConnector™ provides only the communication channel through which the client endpoint communicates the X.509 certificate.  Per Exhibit D, SecureConnector™, which K.Mizra alleges is "part of the" TCB,

---

[4]     X.509 is an International Telecommunication Union standard defining the format of public key certificates.  X.509 certificates are used in many internet protocols, including TLS/SSL, which is the basis for HTTPS, the secure protocol for browsing the web.   *See* X.509, https://en.wikipedia.org/wiki/X.509.  As explained by Microsoft, "public key cryptography relies on a public and private key pair to encrypt and decrypt content."  *See* X.509 Public Key Certificates, https://docs.microsoft.com/en-us/windows/win32/seccertenroll/about-x-509-public-key-certificates.  This has nothing to do with the valid digitally signed attestation of cleanliness required in the assert patent claim limitation.

Dkt. 36, ¶ 37, is neither providing nor receiving any certificate or valid digitally signed attestation of cleanliness.

This is not a case where the defendant's motion to dismiss rests on a disputed claim construction. This a case in which the plaintiff has incorporated an exhibit (Exhibit D) into its complaint that shows that multiple claim limitations are totally missing from the accused instrumentality. "There can be no infringement as a matter of law if a claim limitation is totally missing from the accused device." *London v. Carson Pierie Scott & Co.*, 46 F.2d 1534, 1538 (Fed. Cir. 1991).

## III.    The Amended Complaint fails to allege any plausible claim of indirect infringement.

In a final attempt to salvage its Amended Complaint, K.Mizra argues that it has adequately pled indirect infringement. Again, K.Mizra is mistaken. K.Mizra's Amended Complaint alleges in conclusory fashion—only in two paragraphs—that Forescout is liable for indirect infringement in the form of induced infringement and contributory infringement. Dkt. No. 36, ¶¶ 50, 51. K.Mizra recites only the legal elements of these infringement theories without alleging any facts that plausibly state claims upon which relief can be granted. K.Mizra alleges no facts whatsoever, that if proven at trial, would constitute indirect infringement.

The Federal Circuit has stated "there is no indirect infringement 'when a defendant merely sells a commercial product suitable for some lawful use.'" *Takeda Pharms. U.S.A. Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 640 (Fed. Cir 2015) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)). The mere existence of instructions in product manuals is not enough. As stated in *Takeda*, the question is not just whether instructions "describ[e] the infringing mode," but whether the "instructions teach an infringing use of the device *such that* we are willing to infer from those instructions an affirmative intent to infringe the patent." 785

8

F.3d at 631 (emphasis in original) (citations omitted). Here, K.Mizra's Amended Complaint does not plead any facts sufficient to plausibly establish induced infringement.

K.Mizra also does not explain how third parties could indirectly infringe K.Mizra's patents if, as K.Mizra alleges, Forescout is selling them an infringing product. K.Mizra expressly alleges that Forescout is selling infringing products. Dkt. No. 36, ¶ 2. Indirect infringement requires proof, among other things, that a third party is directly infringing the asserted patents. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). When an authorized sale of a patented article occurs, the patent holder's exclusive rights to control the use and sale of that article are said to be "exhausted," and the purchaser is free to use or resell that article without further restraint from patent law. *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008). Thus, it is legally implausible for Forescout to be liable for selling an infringing product *and* liable for inducing infringement by a third-party purchaser of Forescout's products.

In response, K.Mizra admits that its claims are inconsistent because a sale of the accused product will exhaust claims of indirect infringement premised on direct infringement by third parties who purchased the accused product from Forescout. K.Mizra also does not deny that its Amended Complaint does nothing more than parrot the legal elements of indirect infringement with conclusions and no well-pled facts. K.Mizra says, however, that it is entitled to plead alternative claims for relief (citing Fed. R. Civ.P. 8(d)(2)). To be sure, Rule 8(d)(2) allows a party to plead alternative theories of relief. That, however, is not what K.Mizra has done it its Amended Complaint. The Amended Complaint sets forth no separate claim for indirect infringement as an alternative to its claim for direct infringement. K.Mizra just lumps boilerplate allegations of indirect infringement, without alleging any specific alternative facts, in its count for direct

9

infringement.  K.Mizra simply has not alleged anything in the "alternative."  Thus, Rule 8(d)(2) provides no safe harbor for K.Mizra's failure to plead a plausible claim for indirect infringement.

## IV.    The Court should dismiss the Amended Complaint with prejudice.

The remainder of Plaintiff's response consists of protesting that it never fully understood Forescout's arguments as to why it is not infringing the asserted patents and begging for a third chance to plead a viable claim.  Whatever confusion may have existed at K.Mizra before filing this action against Forescout, there could be no confusion after Forescout filed its first Motion to Dismiss.  K.Mizra has had every fair opportunity to plead in its Amended Complaint and to explain in its response to Forescout's motions to dismiss exactly how Forescout's product contacts a TCB associated with a TPM, within the first host, receives a response, and determines whether the response includes a valid digitally signed attestation of cleanliness.  Instead of engaging on this central question, K.Mizra's response dissembles with irrelevant discussions of claim construction, importing claim limitations, etc.  Not once does K.Mizra coherently identify the TCB, the TPM, the valid digitally signed attestation of cleanliness, or the response supposedly received that includes such an attestation.  The best that K.Mizra can muster is to say: "see Exhibit D."  But Exhibit D directly contradicts K.Mizra's conclusions.

Although requesting leave to amend again, K.Mizra does not explain what that amendment would look like, how it might fix the problems with K.Mizra's claim, or how further amendment would not be futile.  Under these circumstances, dismissal with prejudice is appropriate.  *See Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1352 (Fed. Cir. 2011) (affirming dismissal with prejudice where complaint "could not be saved by further amendment").

DATED: October 29, 2021                    Respectfully submitted,

*/s/ Kimball R. Anderson*
Kimball R. Anderson (Ill. Bar No. 49980)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
Tel.: 312-558-5600
Fax: 312-558-5700
kanderson@winston.com

Katherine Vidal (Cal. Bar No. 194971)
Matthew R. McCullough (Cal. Bar No. 301330)
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
Tel.: 650-858-6500
Fax: 650-858-6550
kvidal@winston.com
mrmccullough@winston.com

William Fox (Tex. Bar No. 24101766)
WINSTON & STRAWN LLP
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Tel.: 214-453-6500
Fax: 214-453-6400
wfox@winston.com

Deron Dacus (Tex. Bar No. 00790553)
Shannon Dacus (Tex. Bar No. 00791004)
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel.: 903-705-1117
Fax: 903-581-2543
ddacus@dacusfirm.com

**ATTORNEYS FOR DEFENDANT
FORESCOUT TECHNOLOGIES, INC.**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served on all parties who have appeared in this case on October 29, 2021, via the Court's CM/ECF system.

Dated: October 29, 2021                    /s/ *Kimball R. Anderson*
                                           Kimball R. Anderson