**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| K.MIZRA LLC | ) | |
| | ) | |
| v. | ) | C.A. No. 2:21-CV-00247-JRG |
| | ) | (Lead Case) |
| CA, INC. | ) | |
| K.MIZRA LLC | ) | |
| | ) | |
| v. | ) | C.A. No. 2:21-CV-00248-JRG |
| | ) | (Member Case) |
| FORESCOUT TECHNOLOGIES, INC. | ) | |
| K.MIZRA LLC | ) | |
| | ) | |
| v. | ) | C.A. No. 2:21-CV-00249-JRG |
| | ) | (Member Case) |
| FORTINET, INC. | ) | |

**PLAINTIFF K.MIZRA'S SUR-REPLY TO DEFENDANT
FORESCOUT'S MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ........................................................................................................ 3

    A. The Amended Complaint Properly Pled Infringement ....................................... 3

        1. The Amended Complaint Sufficiently Pleads Direct Infringement ............. 3

            a. K.Mizra Sufficiently Identified the Accused "[TCB]" Element ..... 3

            b. K.Mizra Sufficiently Identified the "Attestation of Cleanliness" Element ....................................................................................... 5

        2. The Amended Complaint Sufficiently Pled Indirect Infringement .............. 8

    B. Forescout Fails To Establish Further Amendment Would Be Futile ................. 9

III. CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*Estate of Duncan v. Comm'r*,
  890 F.3d 192 (5th Cir. 2018) ................................................................................. 8

*Flex Frac Logistics, L.L.C. v. N.L.R.B.*,
  746 F.3d 205 (5th Cir. 2014) ................................................................................. 8

*Fractus v. Tcl Corp.*,
  No. 2:20-CV-00097-JRG, 2021 U.S. Dist. LEXIS 114011 (E.D. Tex. June 2, 2021) ............... 9

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012) ............................................................................... 2

*Optimum Imaging Techs. LLC v. Canon Inc.*,
  No. 2:19-CV-00246-JRG, 2020 U.S. Dist. LEXIS 257201 (E.D. Tex. May 1, 2020) ............... 2

*Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co.*,
  403 F. Supp. 3d 572 (E.D. Tex. 2019) ..................................................................... 9

*Starpay.com, L.L.C. v. Visa Int'l Serv. Ass'n*,
  No. 3-03-CV-976-L, 2003 U.S. Dist. LEXIS 19754 (N.D. Tex. Nov. 4, 2003) ..................... 10

*Stragent, LLC. v. BMW of N. Am., LLC*,
  No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017) ......................... 8

*Takeda Pharms. U.S.A. Inc. v. West-Ward Pharm. Corp.*,
  785 F.3d 625 (Fed. Cir 2015) ................................................................................. 8

## I.  INTRODUCTION

By providing Forescout with clear notice of its infringing activity, K.Mizra's Amended Complaint sufficiently pleads its case. And contrary to the characterizations in Forescout's reply, K.Mizra's opposition does not: "sweep [Exhibit D] under the rug" (ECF No. 61 at 3); "beg[] for a third chance to plead a viable claim" (*id.* at 10); or "dissembl[]e with irrelevant discussions of claim construction" (*id.*). Instead, the fact is, only now does Forescout finally narrow the issues that it initially raised, by retreating from many of its facially untenable positions.

Indeed, having realized that its premature and improper claim construction positions prove fatal to its Second Motion, Forescout now contends that it never asserted such positions:

> Forescout has no quarrel with the well-accepted propositions <u>that motions to dismiss should be denied or deferred if they rest on disputed claim constructions</u>,[3] that it is generally <u>improper to import limitations into the claims,</u> or that embodiments appearing in the specification ordinarily should not be read into the claim when the claim language is broader than the embodiment. <u>Forescout is not doing any of these things</u>. Thus, K.Mizra's two-page foray, *id.* at 10–11, into claim construction principles is an irrelevant diversionary tactic from the real problem with K.Mizra's Amended Complaint.

*See* ECF No. 61 at 6 (emphasis added). Yet, compare these retractions with Forescout's original claim construction positions that not only relied on a highly-edited specification excerpt but also incorrectly required the "TCB" claim element to: (1) be TCG-compliant; and (2) run virus scans:

> 14, line 1, emphasis added.). Moreover, the patentee explained that <u>the trusted computing base is</u>:
> [An example of a trusted computing base within a computer is …. Another example … is] described in various TCG specifications, such as the TCG Architecture Overview published by the Trusted Computing Group. Trusted code bases may for example execute antivirus scans of the remainder of the computer, including untrusted portions of the disk and/or operating system. [In some embodiments …]
>
> *Id.* (column 14, lines 5–10). The patentee made clear, therefore, that the trusted computing base (<u>compliant with TCG architecture</u>) is a code base that is on the endpoint computer and that <u>runs the computer scans</u>.

*See* ECF No. 44 at 8 (emphasis and edited portions added in red brackets). Such incorrect claim constructions formed the faulty foundation for all of Forescout's arguments purporting that K.Mizra's allegations fell short of the improper requirements imposed by Forescout:

> Exhibit D does not reference the TCG specifications in any way because SecureConnector™ is <u>not compliant with TCG specifications</u> (and there is <u>no allegation</u> to the contrary in the Amended Complaint). Moreover, as Exhibit D makes clear, SecureConnector™ is <u>not performing virus scans</u> on the computer (again, there is <u>no allegation</u> to the contrary in the

*See id.* (emphasis added). Thus, K.Mizra did not make up Forescout's arguments as a diversionary tactic and falsely attribute them. *See* ECF No. 61 at 5. Indeed, K.Mizra was forced into a "two-page foray" response precisely because Forescout took positions contrary to fundamental claim construction law—which it now abandons.

Further, Forescout's own summary of its arguments highlights the other underlying flaw in its motion. While Forescout's First Motion initially only identified a *single* alleged deficiency regarding the "associated with a [TPM]" element, Forescout now raises a multitude of added elements—which could have been raised in the First Motion—by claiming: "Not once does K.Mizra coherently identify the *TCB*, the *TPM*, the *valid digitally signed attestation of cleanliness*, or the *response* supposedly received that includes such an attestation." *See* ECF No. 61 at 10 (emphasis added). Not only is Forescout factually wrong regarding these elements as detailed below, Forescout also repeatedly misapplies the law and rules. Specifically, it is well-settled law that a plaintiff alleging patent infringement need not "prov[]e its case at the pleading stage," nor do the "Federal Rules of Civil Procedure . . . require a plaintiff to plead facts establishing that each element of an asserted claim is met." *See, e.g., Optimum Imaging Techs. LLC v. Canon Inc.*, No. 2:19-CV-00246-JRG, 2020 U.S. Dist. LEXIS 257201, at *3-4 (E.D. Tex. May 1, 2020) (citations omitted). K.Mizra's allegations as pled sufficiently identify all of these elements, and so

Forescout's improper attempt to require K.Mizra to delineate each and every element at the pleading stage should be denied.

Moreover, while the issues may have narrowed, Forescout continues to conflate distinct claim elements, including: (1) the "associated with a [TPM]" element (mooted in response to the First Motion); (2) the " [TCB]" element (raised in the Second Motion); and (3) the "attestation of cleanliness" element (raised in the Second Motion). The issues that apparently remain open regarding these elements can be summarized as follows:

1. The Amended Complaint mooted any alleged deficiencies for the "associated with a [TPM]" element identified in the First Motion.

2. As explained, Forescout backtracks on its imported claim construction requirements that the claimed TCB: (1) be TCG-compliant; (2) perform virus scans; and (3) "generate" the "attestation of cleanliness" element. K.Mizra has sufficiently identified the accused "[TCB]" and "attestation of cleanliness" under the proper claim scope. *See* ECF No. 44 at 8; ECF No. 61 at 6.

3. Forescout had also improperly imported its "generate" requirement into the claim construction for the "attestation of cleanliness" element. Forescout now directly references the claim language, rather than rely on improper constructions. Forescout also now claims deficiencies in K.Mizra's reliance on Exhibit D, a Forescout technical document, as opposed to the proper allegations in the Amended Complaint in ¶¶ 40-42. *See* ECF No. 44 at 13; ECF No. 61 at 5.

4. Forescout now argues for the first time in its reply against the sufficiency of its instructions it provides to its customers, which support K.Mizra's inducement claims. Not only is this argument waived, this Court has rejected these same arguments before and should also reject them here. ECF No. 61 at 8-9.

## II. ARGUMENT

### A. The Amended Complaint Properly Pleads Infringement

#### 1. The Amended Complaint Sufficiently Pleads Direct Infringement

##### a. K.Mizra Sufficiently Identified the Accused "[TCB]" Element

The Amended Complaint more than sufficiently pleads its allegations under the proper claim scope. Realizing that its improper claim construction positions dispose of its motion,

Forescout no longer contends that the "[TCB]" element: (1) be TCG-compliant; (2) perform virus scans; and (3) "generate" the attestation of cleanliness. This does not stop Forescout, however, from arguing against the *wrong* allegations. Specifically, Forescout contends that, "K.Mizra's new API language does not save its case" (ECF No. 61 at 3) because of a purported insufficiency in alleging the "[*TCB*]" element—which is the *wrong* element. Again, K.Mizra amended its complaint with the new API language to moot Forescout's alleged deficiencies for the "*associated with a [TPM]*" element—not the "[*TCB*]" element—as that was the only element the First Motion addressed. *See* ECF No. 61 at 3. This confusion may be why Forescout further contends: "K.Mizra still has not alleged that the accused instrumentality contacts a TCB, *or even identified the alleged TCB*." *See* ECF No. 61 at 3 (emphasis added). But the Amended Complaint unequivocally alleges that the accused Forescout SecureConnector software is part of the TCB:

> Accused Instrumentalities also meet all the requirements of limitation B1 of claim 19. For example, the SecureConnector, which is a part of the trusted computing base, is a small-footprint executable that runs on the endpoint. *See* Exhibit D, HPS Inspection Engine Configuration Guide

*See* ECF No. 36 at ¶ 37 (emphasis added). Thus, the Amended Complaint explicitly identified the accused "[TCB]."

Forescout also contends that Exhibit D (a Forescout configuration guide) does not support these allegations. But that argument is based on a misreading that is unsupported by Forescout's own parenthetical pin-cite:

> Additionally, Exhibit D to the Amended Complaint makes clear that the accused instrumentality does not contact a TCB within the endpoint device. According to Exhibit D, SecureConnector™ <u>only</u> creates a secure channel for communications between the network server (which hosts and runs the Forescout software) and the endpoint device. Dkt. 36-4 at 6 ("<u>SecureConnector creates an *encrypted tunnel* </u>from the endpoint to the Appliance through TCP port 1003.") (emphasis added). Nothing in Exhibit D says, or even implies, that the accused instrumentality contacts a TCB on the endpoint device, as required by the asserted patent claims.

*See* ECF No. 61 at 3 (highlights added). Here, Forescout appears to narrowly read Exhibit D to mean, the SecureConnector's *only* function is to create an encrypted tunnel, as highlighted above. Based on this incorrect reading, Forescout concludes that Exhibit D does not show that the Accused Instrumentalities contact a TCB as the claims recite. *See* ECF No. at 3. But as shown above, even Forescout's parenthetical quote to Exhibit D does not say "only." *See id.* Forescout incorrectly inserts that word. Indeed, while explaining "How SecureConnector Works," Exhibit D expressly states that the: (1) SecureConnector creates a secure connection to the accused Appliance; (2) SecureConnector receives inspection and action requests and responds to them via this connection; and (3) all of this traffic between the SecureConnector and the Appliance takes place over this secure connection. *See* ECF No. 36 Ex. D at 35. Accordingly, Exhibit D fully supports and does not contradict K.Mizra's infringement theory by plainly disclosing how the Accused Instrumentalities contact the TCB, as recited by the claims.

    b.  K.Mizra Sufficiently Identified the "Attestation of Cleanliness" Element

  The Amended Complaint also sufficiently identified the accused "attestation of cleanliness," under the proper claim scope, in ¶¶ 40-42. In its opening brief, Forescout originally imported its "generating" requirement into both the "[TCB]" and "attestation of cleanliness" elements, thereby summarily dismissing ¶ 41 of the Amended Complaint in a single paragraph.

5

*See* ECF No. 44 at 13-14 ("It is not *generating* any valid digitally signed attestation of cleanliness (nor is there any allegation that it does so).") (emphasis added). Instead of addressing the allegations under the proper claim scope, however, Forescout focuses all of its energy on the sufficiency of Exhibit D's disclosures. That is because the *Amended Complaint*—which is what this motion assesses—more than sufficiently pleads K.Mizra's infringement theory.

To start, the Amended Complaint specifically alleges: "For example, the SecureConnector responds by communicating endpoint information (e.g., whether or not there is an insecure condition) in the form of a valid digitally signed attestation of cleanliness to the CounterACT Appliance managing the endpoint." *See* ECF No. 36 at ¶ 40. The Amended Complaint further explains that for example, endpoint users see their *compliance status* in Forescout's Compliance Center, visually indicating the underlying security condition. *See* ECF No. 36 at ¶ 41. The SecureConnector communicates this compliance status over a secure connection to a CounterACT Appliance, which can then be later viewed on the Appliance, further demonstrating that a response is received that includes the attestation of cleanliness. *See* ECF No. 36 at 14. Critically, Forescout's reply arguments completely fail to address any of these Amended Complaint allegations under the proper claim scope. Thus, Forescout's Second Motion should be denied.

Exhibit D also fully supports these allegations. For context, Forescout originally made three separate, incorrect arguments, that: (1) K.Mizra's allegations do not relate to *any response*; (2) K.Mizra's cited Exhibit D somehow *contradicts* K.Mizra's allegations; and (3) the claims require the claimed TCB *generate* the attestation of cleanliness. *See* ECF No. 59 at 9. In response to the first two arguments, K.Mizra's opposition brief showed how these arguments fail, by citing Exhibit D's specific disclosure of how the SecureConnector *responds* to requests:

> **How SecureConnector Works**
>
> SecureConnector creates a secure (encrypted TLS) connection to the Appliance through port 10003. <u>SecureConnector receives inspection and action requests and responds</u> to them via this connection. All Forescout traffic between SecureConnector and the Appliance takes place over the secure connection.

*See id*. Forescout counters that this disclosure does not suggest that the accused Forescout software receives a "valid digitally signed attestation of cleanliness" from a TCB. *See* ECF No. 61 at 4. Forescout is wrong. As explained above, the Amended Complaint in ¶¶ 40-42 further details, supported by this Exhibit D disclosure, how the accused CounterACT appliance receives a compliance status from the SecureConnector over a secure connection. Thus, K.Mizra does not "acknowledg[]e that there is no response in the form of a valid digitally signed certificate of cleanliness from the TCB." *See* ECF No. 61 at 5 (emphasis added). Rather, the Amended Complaint sufficiently pleads its allegations.

To support its third incorrect argument, Forescout originally contended that: "Per the claim language, the trusted computing base must *generate* the attestation of cleanliness." *See* ECF No. 44 at 13 (emphasis added). This argument is also facially wrong. The claims do not recite this. Neither does the specification. K.Mizra is not mistaken that "neither the claims nor the specification *recites* that the trusted computing base must itself *generate* the attestation of cleanliness." *See* ECF No. 61 at 5 (emphasis added). Realizing its error, Forescout now finally turns to the claim language, as it should have originally, stating that the plain claim language requires "receiving a response" from a "trusted computing base" and determining whether it includes "a valid digitally signed attestation of cleanliness." *See id.* Any further mention of a

"generate" requirement is noticeably absent, and K.Mizra's Amended Complaint sufficiently pleads its allegations under the correct standards, fully supported by Exhibit D[1].

## 2. The Amended Complaint Sufficiently Pled Indirect Infringement

Regarding K.Mizra's indirect infringement allegations, Forescout now argues for the first time about the sufficiency of the instructions in its product manuals. *See* ECF No. 61 at 8-9. This argument is waived, as the Fifth Circuit "has held that 'arguments raised for the first time in a reply brief are waived.'" *Estate of Duncan v. Comm'r*, 890 F.3d 192, 202 (5th Cir. 2018) (quoting *Flex Frac Logistics, L.L.C. v. N.L.R.B.*, 746 F.3d 205 (5th Cir. 2014)).

Indeed, in its original brief, Forescout only argued (albeit incorrectly) that because patent exhaustion applied, the Amended Complaint could not plead both direct and indirect infringement: "Thus, it is legally implausible for Forescout to be liable for selling an infringing product *and* liable for inducing or contributing to infringement by a third-party purchaser of Forescout's products." *See* ECF No. 44 at 14 (emphasis original). In its reply, Forescout continues to gloss over the law and incorrectly state that "a sale of the accused product will exhaust claims of indirect infringement." *See* ECF No. 61 at 9. Forescout still fails to establish how its first sale is *authorized*, and thus its exhaustion argument still fails.

Moreover, Forescout's new reply argument regarding the sufficiency of its product manual instructions is not only waived but also fails. For support, Forescout now relies on *Takeda Pharms. U.S.A. Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625 (Fed. Cir 2015). *See* ECF No. 61. This Court has already rejected an argument similar to Forescout's in *Papst Licensing GmbH & Co., KG v.*

---

[1] In a *non sequitur*, Forescout maintains that an X.509-compliant public key certificate does not constitute an "attestation of cleanliness." *See* ECF No. 61 at 7. It is unclear why Forescout continues to rebut this strawman as K.Mizra does not make this allegation. Possibly, this argument relates to Forescout's failed "standards" argument, which it no longer raises in its reply, under the inapposite case, *Stragent, LLC. v. BMW of N. Am., LLC*, No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017). *See* ECF No. 44 at 10-11.

8

*Samsung Elecs. Co.*, 403 F. Supp. 3d 572, 592 (E.D. Tex. 2019). As noted in *Papst Licensing*, *Takeda* is distinguishable as a situation where a drug label advised patients to consult a physician, who would then instruct off-label use of the drug. *See Papst Licensing*, 403 F. Supp. 3d at 591. Here, as in *Papst Licensing,* Forescout's user manuals and customer support do more than merely describe the Accused Instrumentalities. Instead, the express instructions included in both these manuals and in the form of customer support result in infringing activities. This Court has found that, taken together with alleged knowledge of the patents-in-suit (which Forescout has not disputed), such allegations (*see* ECF No. 36 at ¶ 50) support a reasonable inference that a defendant intended for its customers to undertake the infringing acts. *See Fractus v. Tcl Corp.*, No. 2:20-CV-00097-JRG, 2021 U.S. Dist. LEXIS 114011, *11 (E.D. Tex. June 2, 2021). This Court also held that at the pleading stage, the Court must make these reasonable inferences in K.Mizra's favor. *See id.* (citations omitted). Thus, the Amended Complaint properly pled induced infringement.

Lastly, as stated in its opposition brief, K.Mizra is entitled to pursue alternative theories of infringement. *See* ECF No. 59 at 13. In reply, Forescout continues to cite to no contrary authority. Instead, Forescout merely argues form over function by contending: "K.Mizra simply has not alleged anything in the 'alternative.'" *See* ECF No. 61 at 9. At best, the remedy for this alleged deficiency is amending the complaint and not a complete dismissal of this claim.

### B. Forescout Fails To Establish That Further Amendment Would Be Futile

While arguing that the Court should dismiss the Amended Complaint with prejudice, Forescout tellingly no longer references the prior litigation. Instead, Forescout relies on several misstatements to establish that amendment would ostensibly be futile. To start, Forescout is wrong by claiming that K.Mizra "never fully understood Forescout's arguments as to why it is not infringing the asserted patents." *See* ECR No. at 10. There was nothing to misunderstand. Forescout never raised its "TCB" and "attestation of cleanliness" claim construction arguments

prior to its Second Motion. Indeed, Forescout omitted these elements in its last letter to K.Mizra's counsel. *See* ECF No. 59 at 9.

Regarding amendment as an alternative remedy, Forescout makes the bald assertion that K.Mizra must "explain what that amendment would look like, how it might fix the problems with K.Mizra's claim, or how further amendment would not be futile." *See* ECF No. 61 at 10 (citing no legal authority for this purported requirement). Forescout is again wrong about the law. As K.Mizra noted, if the Court were to grant the Second Motion—which it should not—an appropriate alternative remedy would be to first allow for an opportunity to amend, not to dismiss the case entirely for no reason. *See* ECF No. 59 at 10. Moreover, even if such amendments were futile—which Forescout fails to establish—the time to deny a motion for leave to amend is only after the court is presented with the motion for leave together with a proposed amendment, not in this instant motion. *See Starpay.com, L.L.C. v. Visa Int'l Serv. Ass'n*, No. 3-03-CV-976-L, 2003 U.S. Dist. LEXIS 19754, at *6 & n.3 (N.D. Tex. Nov. 4, 2003). In reply, Forescout—with no contrary authority of its own—mischaracterizes this simple identification of the correct rules and law as "begging for a third chance to plead a viable claim." *See* ECF No. 61 at 10. Again, the Amended Complaint sufficiently pleads K.Mizra's case. If needed, amendment would cure any remaining deficiencies. Under any scenario, Forescout's motion should be denied.

### III. CONCLUSION

For the foregoing reasons, the Court should deny Forescout's Second Motion to dismiss.

| Date: November 5, 2021 | Respectfully submitted, |
|---|---|
| | FOLIO LAW GROUP PLLC |

| *Of Counsel*: | */s/Cliff Win, Jr.* |
|---|---|
| | Cristofer I. Leffler, WA Bar No. 35020 |
| Andrea L. Fair | **LEAD COUNSEL** |
| Texas Bar No. 24078488 | Cliff Win, Jr., CA Bar No. 270517 |
| Claire Abernathy Henry | Folio Law Group PLLC |
| Texas Bar No. 24053063 | 1200 Westlake Ave. N., Suite 809 |
| WARD, SMITH & HILL, PLLC | Seattle, WA 98109 |
| 1507 Bill Owens Pkwy. | Tel: (206) 880-1802 |
| Longview, TX 75604 | Email: cris.leffler@foliolaw.com |
| Tel: (903) 757-6400 | Email: cliff.win@foliolaw.com |
| Fax: (903) 757-2323 | |
| Email: andrea@wsfirm.com | Joseph M. Abraham, TX Bar No. 24088879 |
| Email: claire@wsfirm.com | Law Office of Joseph M. Abraham, PLLC |
| | 13492 Research Blvd., Suite 120, No. 177 |
| | Austin, TX 78750 |
| | Tel: (737) 234-0201 |
| | Email: joe@joeabrahamlaw.com |

*Counsel for Plaintiff K.Mizra LLC*

## CERTIFICATE OF SERVICE

I, Cliff Win, Jr., hereby certify that on November 5, 2021 a true and correct copy of Plaintiff K.Mizra's Sur-Reply to Defendant Forescout's Motion to Dismiss Amended Complaint was served on all counsel of record via ECF.

*/s/ Cliff Win, Jr.*
Cliff Win, Jr.