**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| K.MIZRA LLC | ) | |
| | ) | |
| v. | ) | C.A. No. 2:21-CV-00247-JRG |
| | ) | (Lead Case) |
| CA, INC. | ) | |
| _____ | ) | |
| K.MIZRA LLC | ) | |
| | ) | |
| v. | ) | C.A. No. 2:21-CV-00248-JRG |
| | ) | (Member Case) |
| FORESCOUT TECHNOLOGIES, INC. | ) | |
| _____ | ) | |
| K.MIZRA LLC | ) | |
| | ) | |
| v. | ) | C.A. No. 2:21-CV-00249-JRG |
| | ) | (Member Case) |
| FORTINET, INC. | ) | |
| _____ | | |

**PLAINTIFF K.MIZRA'S OPPOSITION TO DEFENDANT FORESCOUT'S**
**MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................. 2

     A.    Procedural History ..................................................................... 2

     B.    Venue Discovery ......................................................................... 2

III.   LEGAL STANDARD ............................................................................ 4

IV.   ARGUMENT ......................................................................................... 5

     A.    The Private Interest Factors Do Not Favor Granting Forescout's
           Motion ........................................................................................... 5

           1.    Relative ease of access to sources of proof................................... 5

           2.    Availability of compulsory process to secure the attendance of witnesses ... 7

           3.    Cost of attendance for willing witnesses .................................... 10

           4.    All other practical problems concerning trial of a case ............... 14

     B.    The Public Interest Factors Do Not Favor Granting Forescout's
           Motion ......................................................................................... 14

           1.    Administrative difficulties flowing from court congestion ......................... 14

           2.    Local interest in having localized interests decided at home...................... 14

           3.    Familiarity of the forum with the law that will govern the case................. 15

           4.    Avoidance of unnecessary problems of conflict of laws or in the application
               of foreign law............................................................................ 15

V.     CONCLUSION ..................................................................................... 15

## **TABLE OF AUTHORITIES**

### **Cases**

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
  358 F.3d 337 (5th Cir. 2004) ................................................................... 4

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
  No. 2:17-cv-513, 2018 U.S. Dist. LEXIS 86382 (E.D. Tex. May 23, 2018) ................. 5, 10, 14

*CA, Inc. v. Netflix, Inc.*,
  No. 2:21-cv-00080-JRG-RSP, 2021 U.S. Dist. LEXIS 206102
  (E.D. Tex. Sep. 27, 2021) ................................................................... passim

*Estate of Duncan v. Comm'r*,
  890 F.3d 192 (5th Cir. 2018) ................................................................... 5

*Fintiv, Inc. v. Apple Inc.*,
  No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102 ........................................ 11, 12, 15

*Flex Frac Logistics, L.L.C. v. N.L.R.B.*,
  746 F.3d 205 (5th Cir. 2014) ................................................................... 5

*Flexuspine, Inc. v. Globus Med., Inc.*,
  No. 6:15-cv-201-JRG-KNM, 2016 U.S. Dist. LEXIS 107709 (E.D. Tex. July 7, 2016) .... 8, 15

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*,
  62 F.3d 1512 (Fed. Cir. 1995) (*en banc*) ........................................................ 8, 15

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ................................................................... 10

*In re HP Inc.*,
  No. 2018-149, 2018 U.S. App. LEXIS 27963 (Fed. Cir. Sep. 25, 2018) .................. 9

*In re Hulu, LLC*,
  No. 2021-142, 2021 U.S. App. LEXIS 22723 (Fed. Cir. Aug. 2, 2021) .................. 9

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ................................................................... 4

*Japan Display Inc. v. Tianma Microelectronics Co.*,
  No. 2:20-CV-00283-JRG, 2021 U.S. Dist. LEXIS 160256 (E.D. Tex. Aug. 25, 2021) ........... 4

*Longhorn HD LLC v. Juniper Networks, Inc.*,
  No. 2:21-CV-00099-JRG, 2021 U.S. Dist. LEXIS 176942 (E.D. Tex. Sep. 16, 2021) ......... 6, 7

*Monarch Networking Sols. LLC v. Cisco Sys.*,
    No. 2:20-CV-00015-JRG, 2021 U.S. Dist. LEXIS 1551 (E.D. Tex. Jan. 5, 2021)........ 5, 6, 7, 8

*Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*,
    No. 6:17-cv-00549-JRG, 2018 U.S. Dist. LEXIS 219899 (E.D. Tex. Sept. 5, 2018).............. 14

*Simpleair, Inc. v. Microsoft Corp.*,
    No. 2:11-cv-416-JRG, 2013 U.S. Dist. LEXIS 196660 (E.D. Tex. Aug. 9, 2013).................. 14

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
    2021 U.S. Dist. LEXIS 187154 (E.D. Tex. Sep. 29, 2021).................................................... 4, 9

**TABLE OF EXHIBITS**

| Exhibit | Abbreviation | Description |
|---|---|---|
| A | Connet Decl. | Declaration of Jonathan Connet (September 10, 2021) |
| B | Connet Dep. | Deposition of Jonathan Connet (October 22, 2021) (excerpts) |
| C | Connet Dep. Ex. 3 | Document produced by Forescout in this case at FORSCOUT_KM_00000001 |
| D | Hausman Dep. | Deposition of Charles Hausman (October 26, 2021) (rough transcript excerpts) |
| E | RFA Resp. No. [1-5] | Defendant Forescout Technologies, Inc. Responses & Objections to Plaintiff K.Mizra LLC's First Set of Requests for Admission |
| F | RFP Resp. No. [1-5] | Defendant Forescout Technologies, Inc.'s Responses & Objections to Plaintiff K.Mizra LLC's First Set of Requests for Production |
| G | Interrog. Resp. No. [1-5] | Defendant Forescout Technologies, Inc.'s Responses & Objections to Plaintiff K.Mizra LLC's First Set of Interrogatories Nos. 1-5 |
| H | Amezcua LinkedIn | LinkedIn Profile of Rob Amezcua |
| I | Greer LinkedIn | LinkedIn Profile of Rob Greer |
| J | Huang LinkedIn | LinkedIn Profile of Mike Huang |
| K | Koppaka LinkedIn | LinkedIn Profile of Aravind Koppaka |
| L | Manning LinkedIn | LinkedIn Profile of Jan Manning |
| M | O'Leary LinkedIn | LinkedIn Profile of Kevin O'Leary |
| N | Srinivasan LinkedIn | LinkedIn Profile of Lakshmi Srinivasan |
| O | Weatherford LinkedIn | LinkedIn Profile of Keith Weatherford |
| P | Forescout Job Postings | LinkedIn job postings for senior software engineers with 5 or 8 years of experience |

I.    **INTRODUCTION**

    This case should remain in this Court because Forescout has failed to establish under the *Volkwagen* factors that the Northern District of California is a "clearly more convenient" forum. Most significantly, regarding sources of proof, the ███ Forescout documentary evidence that is actually located in the Northern District of California is Forescout's source code, almost all of which will not be brought to trial regardless of the venue in which this case proceeds. Regarding witnesses, Forescout relies heavily on a self-serving selection of allegedly relevant California-domiciled witnesses—many of whom Forescout has ████████████████████████ ██████—without specifying why their testimony is important or providing any information as to why their knowledge is likely material to the issues that will be tried. And Forescout relies on an incorrect characterization of plaintiff K.Mizra's location—which is Florida, not California.

    In contrast, based on only the limited information available during venue discovery, K.Mizra has identified multiple knowledgeable witnesses who live and work in Texas—most notably including Forescout's current Chief Product Officer. This is unsurprising given that "[t]he Accused Instrumentalities consist of Forescout's entire business," and virtually every Forescout employee therefore has some involvement with the accused technologies. *See* RFP Resp. No. 1. Indeed, ████████████████████████████████████████. *See* Connet Dep. at 27:25-28:11; 66:9-67:2. ████████████████████ ████████████████████████████████████████ ████████████████████████████████████ *See* Connet Dep. at 51:16-52:6.

    Forescout fails to carry its burden to establish a "clearly more convenient" forum; rather, the resulting balanced weight of the eight public and private *Volkwagen* interest factors do not justify transfer. This case should remain with this Court.

## II.    FACTUAL BACKGROUND

### A.    Procedural History

K.Mizra filed its complaint against Forescout on July 8, 2021. C.A. No. 2:21-CV-00248-JRG, ECF No. 1. The complaint asserts two related patents, U.S. Patent Nos. 8,234,705 and 9,516,048. *See id.* ¶ 1. The patents-in-suit generally relate to technological solutions that address specific challenges grounded in computer network security. *See id.* ¶ 21. On August 24, 2021, this Court subsequently consolidated K.Mizra's case against Forescout for all pretrial issues with cases filed against two other defendants. *See* Case No. 2:21-cv-00247, ECF No. 15.[1]

Before answering, on September 9 Forescout filed its first motion to dismiss (ECF No. 22) and on September 10 filed the instant motion to change venue (ECF No. 23, hereafter "Br."). Forescout supported its transfer motion with a declaration from Chief Strategy Officer Jonathan Connet. *See* ECF No. 23-2, Ex. A (hereafter "Connet Decl."). K.Mizra on September 23 amended its complaint, and therein alleges (*inter alia*) that venue is proper in this Court based on personnel employed at Forescout's Plano location. *See* ECF No. 36 ¶ 7. In addition to direct infringement, K.Mizra further contends that Forescout indirectly infringes the patents-in-suit based on support services provided from Forescout's Plano location. *See id.* ¶ 50.

### B.    Venue Discovery

The parties agreed to exchange a tailored set of venue-related discovery. *See* ECF Nos. 38, 40. Per the agreement, the parties served their requests on September 27, 2021. K.Mizra deposed Forescout's 30(b)(6) witness, Mr. Connet, on October 22, 2021.

K.Mizra's venue discovery from Forescout revealed the following relevant evidence:

- "There are nearly 1,000 Forescout employees worldwide. During the COVID 19 pandemic many are working remotely. The Accused Instrumentalities consist of

---

[1] All subsequent ECF citations are to Lead Case No. 2:21-cv-00247.

Forescout's entire business. Thus, virtually every employee of the company is 'involved' with the Accused Instrumentalities." RFP Resp. No. 1 Response.

- ███████████████████████████████████████████████████ *See* Connet Dep. at 27:25-28:11; 66:9-67:2.

- "Forescout assumes that most [Forescout employees] have some knowledge of certain features of the Accused Instrumentalities because the Accused Instrumentalities are the core of Forescout's business." Interrog. Response No. 3.

- Forescout admits that employees who work in the Plano Customer Support Center support its customers as to all Accused Instrumentalities. *See* RFA Resp. No. 2.

- Forescout admits that its Plano Customer Support Center maintains technical documents. *See* RFA Resp. No. 2.

- Seven of the eight former Forescout employee witnesses whom Forescout identified as possessing relevant information were ███████████████████ ███████████████. *See* Connet Decl. ¶¶ 7-8; Connet Dep. at 81:23-82:1, 93:4-13.

- Forescout employs ███████████ personnel that live in the Dallas-Fort Worth metro area (*see* Connet Dep. at 66:9-67:2; Connet Dep. Ex. 3), including software engineers, managers, and senior executive management including:

  o Chief Information Officer, VP of Information Technology, and board member: Jan Manning. *See* Manning LinkedIn; Connet Dep. Ex. 3.

  o VP, Worldwide Channel Sales, responsible for overseeing channels, distribution, and sales strategy for the Americas: Keith Weatherford. *See* Weatherford LinkedIn.

  o VP, Americas Enterprise Sales: Rob Amezcua. *See* Amezcua LinkedIn.

  o Global controller: Lakshmi Srinivasan, CPA. *See* Srinivasan LinkedIn; Connet Dep. Ex. 3.

  o VP Software Engineering: Mike Huang. *See* Huang LinkedIn; Connet Dep. Ex. 3.

  o Chief Product Officer: Kevin O'Leary, who is ██████████████████ ██████████████████████████████ (Mr. O'Leary lives in Austin, not Dallas-Fort Worth.) *See* Connet Dep. at 48:18-50:17; *see also* O'Leary LinkedIn.

On October 26 Forescout deposed K.Mizra's principal Mr. Hausman, who testified that both of K.Mizra's employees live in Florida. *See* Hausman Dep. at 7:19-9:15, 26:8-27:6.

III.   **LEGAL STANDARD**

Under Section 1404(a), the moving party "squarely" bears "[t]he burden to prove that a case should be transferred." *Japan Display Inc. v. Tianma Microelectronics Co.*, No. 2:20-CV-00283-JRG, 2021 U.S. Dist. LEXIS 160256, at \*5 (E.D. Tex. Aug. 25, 2021) (citations omitted). "Although the plaintiff's choice of forum is not a separate factor, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to 'clearly demonstrate' that the proposed transferee forum is 'clearly more convenient' than the forum in which the case was filed." *Id.* This analysis is "based on 'the situation which existed when the suit was instituted.'" *United Servs. Auto. Ass'n v. PNC Bank N.A.,* 2021 U.S. Dist. LEXIS 187154, at \*7 (E.D. Tex. Sep. 29, 2021) (citations omitted). In considering a transfer, "the Court may consider undisputed facts outside of the pleadings but must draw all reasonable inferences and resolve factual disputes in favor of the non-movant." *Japan Display Inc.*, 2021 U.S. Dist. LEXIS 160256 at \*7.

After satisfying the threshold inquiry of whether a suit could have been filed in the proposed transferee venue,[2] courts in the Fifth Circuit consider eight "public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337 (5th Cir. 2004). The four private-interest factors entail "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The four public-interest factors are "(1) the administrative

---

[2] K.Mizra does not dispute that Forescout could have been properly sued for infringement in the Northern District of California, but also observes that Forescout has not moved to dismiss this case based on improper venue. K.Mizra further notes that Forescout conflates the general-jurisdiction test with the analysis for proper venue, by claiming that "Forescout's San Jose headquarters satisfy the *Cray* factors for the same reason they satisfy the general-jurisdiction test." ECF No. 23 at 6.

difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

## IV.   ARGUMENT

### A.   The Private Interest Factors Do Not Favor Granting Forescout's Motion

#### 1.   Relative ease of access to sources of proof

This factor does not support transfer because Forescout has failed to carry its burden to "specifically identify sources of proof, explain their relevance, and specifically identify the location of those sources." *Monarch Networking Sols. LLC v. Cisco Sys.*, No. 2:20-CV-00015-JRG, 2021 U.S. Dist. LEXIS 1551, at *9 (E.D. Tex. Jan. 5, 2021) (citing *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-513, 2018 U.S. Dist. LEXIS 86382, at *5 (E.D. Tex. May 23, 2018)).[3] In particular, Forescout must articulate the precise manner in which its evidence supports its claim as would be presented at and during trial. *See, e.g.*, *CA, Inc. v. Netflix, Inc.*, No. 2:21-cv-00080-JRG-RSP, 2021 U.S. Dist. LEXIS 206102, at *31 (E.D. Tex. Sep. 27, 2021) (finding that "[d]efendant has failed to identify any specific evidence in the record and articulate the precise way that evidence supports its claim"). Thus, this factor remains neutral.

In its motion and declaration, Forescout expressly confirms only that a data center in San Jose houses source code. *See* Connet Decl. ¶ 10. But Forescout hosts most of its documents ███. *See* Connet Dep. at 93:20-94:13. In fact, Mr. Connet testified that ███████████████████—rendering this factor neutral. *See* Connet Dep. at 99:15-24. Indeed, this Court

---

[3] Forescout cannot cure such deficiencies, as the Fifth Circuit "has held that 'arguments raised for the first time in a reply brief are waived.'" *Estate of Duncan v. Comm'r*, 890 F.3d 192, 202 (5th Cir. 2018) (quoting *Flex Frac Logistics, L.L.C. v. N.L.R.B.*, 746 F.3d 205 (5th Cir. 2014)).

has previously found that such "distributed," decentralized storage architecture "call[s] into serious question" whether, in a practical sense, a physical "location" for data can even be ascertained on such a record. *See Monarch Networking*, 2021 U.S. Dist. LEXIS 1551 at *23.

Moreover, this Court has found that a blanket assertion that source code is in another district—without precisely articulating how that supports its claim—is insufficient, particularly in the face of a showing of relevant evidence in the transferor district. *See, e.g.*, *CA, Inc.*, 2021 U.S. Dist. LEXIS 206102, at *31; *Longhorn HD LLC v. Juniper Networks, Inc.*, No. 2:21-CV-00099-JRG, 2021 U.S. Dist. LEXIS 176942, at *7 (E.D. Tex. Sep. 16, 2021) ("[S]ources of proof were available in both this District and the Northern District as of the filing of this case. This does not support transfer"). Here, Forescout merely contends in a single paragraph that relevant evidence usually comes from the accused infringer, identifying San Jose as the location of its source code—critically, without precisely articulating how that source code supports its claim, as required.[4] *See* Br. at 11. In contrast, Forescout's Plano location apparently houses relevant documents such as ███████████████████████████████████████████████████. *See, e.g.*, Connet Dep. at 61:2-6; RFA Resp. No. 3; Interrog. Resp. No. 1. This naturally follows as Forescout acknowledges that the Accused Instrumentalities "consist of Forescout's entire business." RFP Resp. No. 1. These documents are highly relevant at least to K.Mizra's indirect infringement theories because at a minimum, they establish how Forescout instructs its customers to infringe the patents-in-suit. Accordingly, because relevant sources of proof are also available in this district, this factor does not support transfer. *See, e.g.*, *CA, Inc.*, 2021 U.S. Dist. LEXIS 206102 at *31; *Longhorn HD*, 2021 U.S. Dist. LEXIS 176942 at *7.

---

[4] The parties' agreed Protective Order provides strict limits on the generation and use of source code exhibits, including confining all review to specific offsite locations. *See* ECF No. 58 ¶ 10.

2.     <u>Availability of compulsory process to secure the attendance of witnesses</u>

This factor offers little to no weight in favor of transfer. With respect to all of the potential witnesses Forescout has identified, Forescout again fails to specifically allege why their testimony is important or provide any information regarding the likelihood that their knowledge is material to the issues that will actually be tried. Forescout identifies three categories of allegedly "unwilling" witnesses with supposedly unique knowledge: the inventors, third-party prior art witnesses, and two former executives (Messrs. Greer and Abreu).[5] To start, this Court has found that not providing specific information as to particular named inventors "fails for vagueness." *Longhorn HD*, 2021 U.S. Dist. LEXIS 176942 at *12 ("Juniper's identification of . . . the named inventors . . . fails to give any specific information as to particular named inventors"). Next, Forescout's reliance on third-party prior art witnesses is "speculative at best," and Forescout has also failed to specifically allege why their particular knowledge is relevant or likely to be material to issues to be tried. *See, e.g.*, *CA, Inc.*, 2021 U.S. Dist. LEXIS 206102 at *36; *Monarch Networking,* 2021 U.S. Dist. LEXIS 1551 at *23 ("the relevance of a particular prior art witness's live testimony at trial is speculative at best").

Importantly, Forescout even fails to carry its burden concerning its two former executives by failing to establish that they have relevant unique knowledge required for trial and that they are unwilling to travel. Forescout contends that they are "unlikely to voluntarily travel" without any express supporting facts,instead citing generically to the Connet Declaration. *See* Br. at 11.

---

[5] Forescout references in passing "eight former executives . . . who are no longer under Forescout's control and whose testimony will likely be necessary." Br. at 7. Although Forescout cites only to Connet Declaration Paragraph 8 (discussing Messrs. Greer and Abreu), the remaining six former employees are presumably those referenced at Paragraph 7. Forescout neglects to mention that the reason seven of those eight employees (six of whom are not actually "executives," but rather engineers) are "no longer under Forescout's control" is that they were all ███████████████████████. *See* Connet Dep. at 81:23-82:1, 84:11-85:20, 93:4-13.

Forescout further fails to establish why it needs their specific testimony at trial. Instead, Forescout alleges in conclusory fashion that "[t]hese former employees have unique knowledge about the accused products because they were responsible for the technical roadmaps of the accused products." *See* Br. at 11. As support, Forescout cites the Connet Declaration, which explains that these witnesses allegedly have unique knowledge due to their work on "corporate strategy and technical roadmaps for accused products." *See* Connet Decl. ¶ 8. More generally, Forescout argues that because "decisions made or approved by employees in the Northern District of California underlie this dispute," this case should be transferred. *See* Br. at 13. These examples all highlight the flaw behind Forescout's rationale—the *intention behind the design* of a product is of no legal significance to direct infringement, let alone a triable one. Specifically, "intent is not an element of direct infringement," as infringement "remain[s] a strict liability offense." *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1527 (Fed. Cir. 1995) (*en banc*), *rev'd on other grounds*, 520 U.S. 17 (1997); *see also, e.g.*, *Flexuspine, Inc. v. Globus Med., Inc.*, No. 6:15-cv-201-JRG-KNM, 2016 U.S. Dist. LEXIS 107709 (E.D. Tex. July 7, 2016). Thus, by focusing on *why* the accused instrumentalities operate as they do instead of the more salient *how*, Forescout fails to establish how these witnesses' testimony is required at trial.

Lastly, based on the current record, Messrs. Greer and Abreu are apparently cumulative of party witnesses who would not require compulsion to attend trial, and thus who are not appropriate to consider under this *Volkswagen* factor. *See Monarch Networking*, 2021 U.S. Dist. LEXIS 1551 at *22 ("Since [defendant's] witnesses are willing to testify, [plaintiff] is correct that [defendant's] witnesses should be deemed willing witnesses, and as such are not to be considered under the compulsory process factor."). Specifically, Mr. Greer was Chief Product Officer and Mr. Abreu was both Chief Product Officer and Chief Strategy Officer. These roles are not unique. Forescout's

current Chief Product Officer Kevin O'Leary, a party witness who would not require compulsion, lives in Austin. *See* Connet Dep. at 79:22-80:9; 48:22-49:5. Mr. O'Leary is ███████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████ *See id.* 50:5-17. And now Mr. Connet, a similar current party witness, is Chief Strategy Officer. Moreover, while preparing for his deposition as Forescout's 30(b)(6) designee, Mr. Connet ████████████████████████████████████. *See id.* at 18:12-22. Answers came from specific individuals, including from █████████████ ████████████████████████████████████. *See id.* at 20:3-10. While Mr. Connet could substitute as a trial witness in his role as Chief Strategy Officer, ████████ ██████████████ could further come directly from the source, ████████████, as an additional trial witness. Accordingly, Forescout has failed to establish the uniqueness of Messrs. Greer's and Abreu's potential testimony, and on the current record, these witnesses are duplicative of party witnesses.

In sum, under this factor, Forescout "must make a showing as to the availability of compulsory process for *unwilling* witnesses in the transferee district." *See United Servs. Auto. Ass'n*, 2021 U.S. Dist. LEXIS 187154 at *10 (emphasis original) (citations omitted). Forescout relies on a pair of explicitly non-precedential Federal Circuit opinions to argue that unwillingness of each individual witness need not be shown. *See* Br. at 10 (citing *In re Hulu, LLC*, No. 2021-142, 2021 U.S. App. LEXIS 22723 (Fed. Cir. Aug. 2, 2021) ("THIS DECISION WAS ISSUED AS UNPUBLISHED OR NONPRECEDENTIAL AND MAY NOT BE CITED AS PRECEDENT."); *In re HP Inc.*, No. 2018-149, 2018 U.S. App. LEXIS 27963 (Fed. Cir. Sep. 25, 2018) (same)). But before unwillingness comes into play, relevance must first be shown. As detailed at length above, Forescout has failed to establish the unwillingness to travel of any

witnesses who actually possess uniquely relevant knowledge, and so this factor should be considered neutral (or at best weighing toward transfer only slightly).

3.   Cost of attendance for willing witnesses

This factor also does not support transfer because Forescout again fails to establish how the witnesses it identifies have knowledge material to trial. Instead, Forescout repeats many of the same errors as the defendant in *CA, Inc.* This Court has already rejected many of these same arguments and should also do so here.

To start, just as the *CA* defendant did, Forescout here notes that the Federal Circuit cautions that "[r]equiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary." *See, e.g.*, 2021 U.S. Dist. LEXIS 206102 at *41-42 (citing *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009)); Br. at 9 (same). But in response to this same argument, this Court has previously held that for the Court to meaningfully evaluate the relative convenience of different venues for *trial*, the Court must understand whether a potential witness has knowledge that is material to the issues that will be disputed *at that trial*. *See CA, Inc.*, 2021 U.S. Dist. LEXIS 206102 at *41-42. Forescout thus applies the incorrect standard, and this factor remains neutral at best.

Moreover, Forescout impermissibly "double counts" by considering the same witnesses as willing under this factor, yet unwilling under the previous factor. *See* Br. at 7-8; *see also CA, Inc.*, 2021 U.S. Dist. LEXIS 206102 at *39-40 (finding that movant cannot "double-dip" by counting individuals under both factors) (citing *AGIS Software*, 2018 U.S. Dist. LEXIS 86382 ("It is common to see parties attempt to have this Court double-or triple-count witnesses for purposes of evaluating the convenience of a forum . . . . These factors do not permit a single source of proof or witness to be 'double counted' or unduly influence the analysis.")). Accordingly, Forescout's analysis of former executives, inventors, and prior art witnesses does not apply to this factor.

Further, again as the *CA* defendant did, Forescout here also provides a laundry list of twenty-four employees that all reside in or close to the Northern District of California. *See* Br. at 8-9. Mechanically counting witnesses, however, not only invites gamesmanship but also ignores the information asymmetry between Forescout and K.Mizra regarding Forescout's employees. *See Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *10-11 (W.D. Tex. Sept. 10, 2019). More importantly, even Forescout acknowledges that "at this early stage of the action it is hard to say . . . whether these employees have unique knowledge" (Br. at 9)—thus failing to support this factor for transfer. *Cf. CA, Inc.*, 2021 U.S. Dist. LEXIS 206102 at *42 ("For the Court to meaningfully evaluate the relative convenience of different places of trial, the Court must understand whether a potential witness has knowledge that is material to the issues that will be disputed at the trial."). Forescout nonetheless contends that all these potential witnesses "have relevant and material information." *See* Br. at 9. In response to such contentions, however, this Court has found that simply stating that witnesses "clearly have information relevant" does not meet a defendant's burden to specifically allege how their testimony is important. *See CA, Inc.*, 2021 U.S. Dist. LEXIS 206102 at *38-39. Thus, because Forescout fails to establish how its potential witnesses have knowledge material to the triable issues, this factor remains neutral.

Additionally, as further happened with the *CA* defendant, Forescout here fails to mention numerous engineers and other employees in Texas with relevant knowledge about the Accused Instrumentalities. *See id.* Indeed, because "[t]he Accused Instrumentalities consist of Forescout's entire business," Forescout acknowledges that "virtually every employee" of the company has at least some involvement with this technology. RFP Resp. No. 1. Thus, after even minimal venue-related discovery, K.Mizra identifies numerous Forescout employees in Texas (*see* Connet Dep. Ex. 3) with potentially relevant knowledge regarding triable issues.

This case is also factually similar to *Fintiv*, in which the plaintiff identified support employees as potentially relevant witnesses as to indirect infringement claims. *See* 2019 U.S. Dist. LEXIS 171102 at *10. In that case, the Court found that because both parties identified a few potential witnesses in both venues (with varying levels of specificity), this factor was rendered neutral. *See id*. Here, Forescout's Plano location employs multiple potential witnesses. Just as in *Fintiv*, Forescout's tech support employees may potentially establish indirect infringement, as these employees have knowledge of how Forescout instructs its customers to use the Accused Instrumentalities in an infringing way. *See id*. Additionally, the Plano location further employs ███████████████████████████████████████████████████, that are potentially relevant to ███████████████████████████████. *See* Connet Dep. at 102:14-103:10; Connet Dep. Ex. 3. Thus, because the parties have identified potential witnesses in each venue, this Court should find this factor neutral. *See Fintiv*, 2019 U.S. Dist. LEXIS 171102 at *10.

K.Mizra can further identify potential witnesses relevant to direct infringement who live and work in Texas. Mr. Connet testified that ████████████████████████████████████████ ███████████████████████████████████. *See* Connet Dep. at 62:18-63:4. Indeed, the very reason Forescout chose Plano as its ███████████████████████████████████ ███████████████████████████ *See* Connet Dep. at 52:1-6. Accordingly, it is also makes sense that Forescout's VP of Engineering, Mike Huang, works out of Frisco, Texas. *See* Huang LinkedIn. Prior to his role as VP, Mr. Huang was the Senior Director of eyeSight Global Engineering, where he was "[r]esponsible for all Engineering of eyeSight and eyeControl product lines"—i.e., the current names for Forescout's accused products.[6] *See* Huang LinkedIn. Further,

---

[6] *See* Connet Dep. at 12:20-13:2 ████████████████████████████████████████ ████████████████████████████████████████████████████████████

Aravind Koppaka is a Senior Software Engineer who lives in the Dallas-Fort Worth area, whose responsibilities have included development of the accused CounterACT physical appliance, including "[d]evelopment of new security features and maintenance to the ForeScout CounterACT (NAC)" and "[p]roactively add/expand/develop[ing] visibility & control capabilities for ForeScout CounterACT across various platforms/integrators/OS." *See* Koppaka LinkedIn. Additionally, job postings indicate that the Plano office is looking for senior software engineers with experience with VMware, Hyper-V, and KVM, which provide the platforms for the accused virtual versions of the CounterACT physical appliance. *See* Forescout Job Postings; ECF No. 36 ¶ 2.

K.Mizra can also identify multiple potential trial witnesses regarding damages. Forescout's VP of WW Channel Sales, Keith Weatherford, lives in Dallas and is potentially highly relevant to trial because he has the "[r]esponsibility to oversee the Channels, Distribution & Inside Sales strategy for the Americas." *See* Weatherford LinkedIn. Further, Rob Amezcua is VP of Americas Enterprise Sales. *See* Amezcua LinkedIn. Moreover, Forescout's global controller lives in Coppell, TX. *See* Srinivasan LinkedIn.

Accordingly, it is further noteworthy that Forescout



*See* Connet Dep. at 39:1-40:12; *see also id.* at 31:11-33:7.

, which Forescout contends in its motion is the only appropriate

(emphasis added).

venue for trial. *See Simpleair, Inc. v. Microsoft Corp.*, No. 2:11-cv-416-JRG, 2013 U.S. Dist. LEXIS 196660, at *21-22 (E.D. Tex. Aug. 9, 2013) (considering the location of business meetings while assessing the "cost of attendance for willing witnesses" factor).

Lastly, both of plaintiff K.Mizra's employees live in Florida, the location of K.Mizra's current primary place of business—not California, as Forescout contends. *Compare* Br. at 9 *with* Hausman Dep. at 7:19-9:15, 26:8-27:6. Accordingly, Texas is a more convenient venue for K.Mizra—particularly when considering travel time, lodging, and meals. *See, e.g.*, *AGIS Software*, 2018 U.S. Dist. LEXIS 86382 at *22 ("[c]ontrolling precedent directs courts to consider actual travel logistics, including airplane flight times—and not distance-as-the-crow-flies") (citations omitted); *Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*, No. 6:17-cv-00549-JRG, 2018 U.S. Dist. LEXIS 219899, at *6 (E.D. Tex. Sept. 5, 2018) ("airfare is only one factor in the cost of attendance"; "lodging and meals are likely to be significantly less expensive in Tyler than in Seattle."). Thus, this factor is neutral at best, and does not support Forescout's motion.

4.      All other practical problems concerning trial of a case

Forescout's brief does not address this factor. Thus, it does not weigh in favor of transfer.

**B.      The Public Interest Factors Do Not Favor Granting Forescout's Motion**

1.      Administrative difficulties flowing from court congestion

Forescout acknowledges that the federal case-management statistics indicate that the times between filing and disposition and filing and trial are longer in the Northern District of California than in this district. *See* Br. at 13. K.Mizra agrees that this factor weighs against transfer.

2.      Local interest in having localized interests decided at home

This factor weighs against transfer or is at best neutral. K.Mizra's Amended Complaint alleges that Forescout has at least induced its customers to directly infringe by, for example, "providing customer support and training online and through its customer support call center

staffed 24 hours a day, seven days a week to answer customer calls about their Forescout applications and how to use them in an infringing manner." ECF No. 36 ¶ 50. Mr. Connet confirmed that ████████████████████████████████████████████████████ ███████████████████████████████████ *See* Connet Dep. at 52:1-6. Accordingly, under *Fintiv*, K.Mizra's identification of support employees and technical writers as potential trial witnesses weigh against transfer. *See* 2019 U.S. Dist. LEXIS 171102 at *22 (finding localized interest with the identification of at least one employee who may have relevant information).

Moreover, Forescout only contends that its Plano location is "not tethered to the events of this lawsuit" simply because "no relevant *decisions* pertaining to the design or engineering of the accused products were made in the Eastern District of Texas" and because "*decisions made or approved* by employees in the Northern District of California underlie this dispute." Br. at 12-13 (emphases added). As detailed above, these arguments repeat Forescout's intention-behind-design error—rendering these arguments irrelevant. *See*; *Hilton Davis Chem. Co.,* 62 F.3d 1512 at 1527; *Flexuspine*, 2016 U.S. Dist. LEXIS 107709. This factor is neutral at best.

> ### 3.   Familiarity of the forum with the law that will govern the case

K.Mizra agrees with Forescout that this factor is neutral.

> ### 4.   Avoidance of unnecessary problems of conflict of laws or in the application of foreign law

K.Mizra agrees with Forescout that this factor is neutral.

## V.   **CONCLUSION**

Forescout bears the burden to show that its desired forum is "clearly more convenient" than this Court. For the foregoing reasons, Forescout has failed to carry its burden, and the Court should deny Forescout's motion to transfer.

Date: November 5, 2021

Respectfully submitted,

LAW OFFICE OF JOSEPH M. ABRAHAM

*Of Counsel*:

Andrea L. Fair
Texas Bar No. 24078488
Claire Abernathy Henry
Texas Bar No. 24053063
WARD, SMITH & HILL, PLLC
1507 Bill Owens Pkwy.
Longview, TX 75604
Tel: (903) 757-6400
Fax: (903) 757-2323
Email: andrea@wsfirm.com
Email: claire@wsfirm.com

*/s/ Joseph M. Abraham*
Joseph M. Abraham, TX Bar No. 24088879
Law Office of Joseph M. Abraham, PLLC
13492 Research Blvd., Suite 120, No. 177
Austin, TX 78750
Tel: (737) 234-0201
Email: joe@joeabrahamlaw.com

Cristofer I. Leffler, WA Bar No. 35020
**LEAD COUNSEL**
Cliff Win, Jr., CA Bar No. 270517
Folio Law Group PLLC
1200 Westlake Ave. N., Suite 809
Seattle, WA 98109
Tel: (206) 880-1802
Email: cris.leffler@foliolaw.com
Email: cliff.win@foliolaw.com

*Counsel for Plaintiff K.Mizra LLC*

## CERTIFICATE OF AUTHORIZATION TO SEAL

The undersigned hereby certifies that the foregoing document is authorized to be filed under seal pursuant to this case's Protective Order (ECF No. 58) in compliance with Local Rule CV-5(a)(7)(B).

*/s/ Joseph M. Abraham*
Joseph M. Abraham

## CERTIFICATE OF SERVICE

I, Joseph M. Abraham, hereby certify that on November 5, 2021 a true and correct copy of Plaintiff K.Mizra's Opposition To Defendant Forescout's Motion To Transfer Venue Pursuant To 28 U.S.C. § 1404(a) was served on the following counsel of record at the addresses and in the manner indicated below.

*/s/ Joseph M. Abraham*
Joseph M. Abraham

## VIA E-MAIL

Kimball R. Anderson
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
312-558-5600 (phone)
312-558-5700 (fax)
kanderson@winston.com

William Fox
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
214-453-6500 (phone)
214-453-6400 (fax)
wfox@winston.com

Katherine K. Vidal
Matthew R. McCullough
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
650-858-6500 (phone)
650-858-6550 (fax)
kvidal@winston.com
mrmccullough@winston.com

Deron Dacus
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
903-705-1117 (phone)
903-581-2543 (fax)
ddacus@dacusfirm.com

*Attorneys for Defendant Forescout Technologies, Inc.*